| 97 | 547 |
| 108 | 2615 |

# Fred Rothschild v. New York Life Insurance Co.

1. FOREIGN INSURANCE COMPANIES—*Subject to the Laws of this State Equally with Domestic Companies.*—A foreign insurance company, doing business in this State, is subject to the laws in relation to insurance companies, equally with domestic companies.

2. STATUTES—*Construction of the Words "May" and "Shall" When Used in.*—The words "may" or "shall," when used in a statute, may be used interchangeably as will best express the legislative intention.

3. SAME—*Rule of Construction of the Word "May" When Used in Statutes.*—The word "may," when used in a statute, is to be construed to mean "shall" whenever the rights of the public or of third persons depend upon the exercise of the power, or the performance of the duty to which it refers, and such is its meaning in all cases where the public interests and rights are concerned, or a public duty is imposed upon officers, and the public or third persons have a claim *de jure* that the power shall be exercised.

4. MUTUAL INSURANCE COMPANIES—*Distribution of Surplus Funds.*—Section 14 of chapter 73 R. S. (Hurd's Ed., 1899, p. 1014, par. 194) is not a grant of power, but is perhaps a limitation on the power of such

# 548 APPELLATE COURTS OF ILLINOIS.

companies to distribute their surplus funds oftener than once a year. In the absence of such a provision, the time of distribution would depend on the directors except so far as limited by the charter of the company or valid by-laws.

5. SAME—*Construction of Section 14, Ch. 73, R. S.*—Section 14 of chapter 73, R. S. (Hurd's Ed., 1899, p. 1114, par. 194), when considered entire, seems to be for the protection of policy holders. Such companies are permitted to make distribution not oftener than once a year, but in determining the amount of the surplus to be distributed there is to be reserved an amount not less than the aggregate net value of all outstanding policies.

6. CONSTRUCTION OF STATUTES—*Intention of the Legislature, How Ascertained.*—The intention of the legislature in enacting a law is to be ascertained from the language used in the act, and when such language is plain and unambiguous the words are to be understood in their commonly accepted meaning.

7. SAME—*Of Statutes and Contracts.*—Statutes and contracts should be read and understood according to the natural and most obvious import of the language used, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation.

8. WORDS AND PHRASES—*" May " and " Shall" as Used in Section 14, Ch. 73, R. S.*—Applying the rules of law to the words " may " and " shall," as used in section 14, chapter 73, R. S. (Hurd's Ed., 1899, p. 1014, par. 194), the former must be regarded as permissive and the latter as imperative.

**Bill for Relief.**—Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the March term, 1901. Affirmed. Opinion filed October 24, 1901.

**Statement.**—This is an appeal from a decree sustaining a demurrer to a bill filed by appellant August 2, 1900, and dismissing the bill.

It is averred in the bill that April 4, 1895, defendant issued to complainant, on his applications, two policies of insurance on his life, one for the sum of $10,000, the annual premium on which is $512, and one for $8,000, the annual premium on which is $400.50; that said policies were delivered to complainant in Chicago, Illinois, and he paid the first annual premiums due thereon, and has also paid the annual premiums due each April 4th, in the years 1896, 1897, 1898, 1899 and 1900; that the annual premiums due in the years 1899 and 1900 were paid with money borrowed by com-

plainant from defendant, for which complainant executed to defendant his notes bearing interest at the rate of five per cent per annum, payable annually, in advance, to secure which the defendant holds said policies as collateral security, by reason of which complainant can not set forth more specifically the contents of the policies; that the defendant is a foreign insurance company, and before it assumed any risk on complainant's life, obtained a license to transact the business of insurance in this State; that the charter of the defendant contains the following provisions:

### Article III.

Section 1. "The business of the company shall be insurance on lives, and all and every insurance appertaining to life, and receiving and executing trusts, and making endowments, and granting, purchasing and disposing of annuities."
\* \* \*

### Article IV.

Section 1. "The company shall have no capital stock, but shall be a mutual company.

Sec. 2. "The officers of the company within sixty days subsequent to the first of January, in each year, shall cause an estimate to be made of the profit and true estate of the affairs of the company, as near as may be, for the preceding year, which estimate shall be conclusive upon all persons entitled to share in any distribution of surplus which shall be made in accordance with the general provisions of law either in cash, or in reduction of premium, or in reversionary insurance payable with the policy on the same conditions as therein expressed."

That the said policies of insurance executed by the defendant and delivered to your orator, as aforesaid, are issued by the defendant upon what is described as the accumulation plan, and each one of said policies contains the following provisions, to wit:

"If the insured is living on the 4th day of April, in the year nineteen hundred and fifteen, on which date the accumulation period of this policy ends, and if the premiums have been paid in full to said date the insured is entitled to one of the six benefits following:

First. To continue the policy and receive the dividend then apportioned by the company," etc.

" No dividend shall be apportioned or paid on this policy before the end of the accumulation period," etc.

That the defendant has annually reported to the insurance department of the State of Illinois its assets and liabilities and its surplus, according to the legal standard of the State of Illinois, and the business done by it in said State, and avers, upon information and belief, that the complainant's policies were included in each of said annual reports as business done by the defendant in said State; that the premium charged the complainant is based upon the assumptions of the actuaries' table of mortality, and four per cent interest, and is a level premium, by which practice the defendant charges the complainant, in advance, a certain definite sum, called " Reserve," which is set aside annually as a fund to meet future costs of insurance at a time of life when the net level premium charged might not be sufficient to pay complainant's contribution to annual death losses, and which fund, compounded at four per cent, subserves the purpose of annually reducing the defendant's risk upon complainant's life, and to the extent of which the insured is actually made the insurer; that to this net level or mathematical premium the defendant has added an arbitrary amount, called " loading," on the assumption that it may be needed to meet expenses and contingencies not provided for by the mortality table; that the defendant's surplus arises annually from payments made by the complainant and defendant's other insured, for assumed costs of insurance on the amount at risk, and for expenses and contingencies, and from interest earnings of their contributions to " Reserve," above the assumed rate of four per cent, whenever and as often as a less number has died during the year than was assumed by the table would die, and whenever and as often as the assumed expenses have exceeded the actual expenses during the year, and because the contingencies which defendant assumed would occur, have not occurred, and whenever and as often as the actual interest earned by defendant exceeds the rate assumed by the defendant.

The bill then alleges, upon information and belief, that

from the 4th day of April, 1895, up to and inclusive of the 3d day of April, 1900, the defendant has annually made large savings from the sum charged the complainant and its other insured for costs of insurance and expenses and contingencies; and has annually earned, as interest, large sums in excess of four per cent, all of which savings and earnings are now in its hands and possession, and that the defendant's ascertained surplus on the first day of January, 1895, was $20,249,308, and on January 1, 1900, $41,435,484, a clear gain in five years of $21,186,176; that when defendant issued the said policies to the complainant, the defendant knew from its past experience that the premiums charged the complainant were excessive, etc.; that complainant's proportion of defendant's savings and earnings amounted to, to wit, the sum of $1,000 April 4, 1900; that knowledge of the facts hereinbefore stated has but recently, to wit, July 2, 1900, come to complainant, and complainant charges that said policies are cunningly devised gaming contracts, etc.; that in certain books published by defendant, it has estimated that, according to its past experience, the surplus fund belonging to complainant's policies, or to similar policies, would amount to, to wit, $6,318, at the end of the accumulation period; that should complainant die during the present year, defendant would take from complainant's surplus account, and transfer to others insured, the said sum of, to wit, $1,000, now in its hands, etc.; that July 10, 1900, complainant demanded of defendant his equitable proportion of the surplus funds of defendant for the first five years of the policies, which demand defendant refused; that the " reserve " contributed by complainant on said policies amounted to, to wit, $2,554.56; that defendant is a mutual company, etc.

The prayer is that the policies may be set aside and vacated and the notes and all other writings in possession of the defendant be canceled and surrendered to complainant, and that defendant be ordered to pay to complainant all moneys paid by him on said policies and notes, or, if the court shall find the policies valid, that defendant be decreed

to apportion and pay to complainant his equitable share of the surplus fund.

NICHOLAS MICHELS, attorney for appellant; CLARK & CLARK, of counsel.

EDWARD O'BRYAN, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel bases appellant's right to the relief prayed on the following propositions:

1.    That a foreign insurance corporation, doing business in this State, is subject to the laws of the State in relation to insurance companies, equally with domestic insurance companies.

2.    That section 14 of "An act to organize and regulate the business of life insurance." Hurd's Stat. 1899, p. 1014, is so far mandatory that a mutual insurance company must make distribution of its surplus at least every five years.

3.    That the policies in question, in providing that no dividend shall be apportioned or paid on them before the end of the accumulation period, viz., April 4, 1915, are in contravention of section 14, above referred to.

4.    That the policies in question are gaming contracts and in violation of section 131 of chapter 38 of the statutes. Hurd's Stat. 1899, p. 590.

The first proposition is unquestionably sound.    Section 14 is as follows:

"Life insurance companies doing business in this State, which do business on the principle of mutual insurance, or the members of which are entitled to share in the surplus funds thereof, may make distribution of such surplus as they have accumulated, annually, or once in two, three, four or five years, as the directors thereof may from time to time determine.    In determining the amount of the surplus to be distributed, there shall be reserved an amount not less than the aggregate net value of all outstanding policies, said value being computed by the combined experience or actuary rate of mortality, with interest not exceeding four per cent."

It is contended that the word "may" in the section

should be read " must," so that the section will read, "must make distribution of such surplus as they have accumulated, annually," etc.   In support of this contention Kane v. Footh, 70 Ill. 587; Fowler v. Pirkins, 77 Ib. 271; James v. Dexter, 112 Ib. 489, and Brokaw v. Commissioners, etc., 130 Ib. 490, are cited.

None of these cases are in point.   In Kane v. Footh it was contended that the word "may " in a statute providing "And the court may, at the request of either party, require the jury to render a special verdict," etc., should be read *shall,* but the court held not.   In Fowler v. Pirkins, *supra,* it was contended that in an act providing "Appeals and writs of error may be taken, etc., the word "may" should be read *shall,* but the court held not, saying :   " The words *may* or *shall,* when used in a statute, may be read interchangeably *as will best express the legislative intention."*   In Brokaw v. Commissioners, etc., *supra,* the language of the statute was :   " That the commissioners, after having given reasonable notice, etc., may remove any such fence or other obstruction."   The court held that the word "may " should be read " shall," and said :

" The word ' may' in a statute will be construed to mean ' shall' whenever the rights of the public or of third persons depend upon the exercise of the power, or the performance of the duty to which it refers, and such is its meaning in all cases where the public interests and rights are concerned, or a public duty is imposed upon public officers, and the public or third persons have a claim *de jure* that the power shall be exercised."

It is clear that the court in using the words " whenever the rights of the public or of third persons depend upon the exercise of the power, or the performance of the duty," referred to the power of the commissioners, who were public officers, and to their duty in the premises.   Appellant's counsel rely mainly on certain language of the court in Kane v. Footh, *supra.*   In that case the court cites Schuyler v. Mercer County, 4 Gilm. 20, where the court say :

" The word ' may,' when used in statutes should be construed as permissive or imperative, according to the intention of the legislature in each case where it is so used.   In

its grammatical sense it is permissive, and there is nothing to show that in this case it was intended to be imperative."

The vital question is, what was the intention of the legislature? Was it, or not, the intention to use the word "may" imperatively, and as if the word *shall* had been used?

Mutual insurance companies do not derive their power to distribute their surplus funds from the statute. Section 14 is not a grant of power, but is perhaps a limitation on the power to distribute surplus oftener than once a year. In the absence of such a provision as to the distribution of the surplus, the time of distribution would depend on the directors, except so far as limited by the charter of the company or a valid by-law. Considering the entire section it seems to be for the protection of policy holders. A mutual insurance company is permitted to make distribution not oftener than annually. If the surplus will not warrant annual distribution, then distribution may be made in two, three, four or five years. But it is expressly provided that " in determining the amount of the surplus to be distributed, there shall be reserved an amount not less than the aggregate net value of all outstanding policies." The words " may " and " shall " are both used in the section, the former in the first sentence of the section as to distribution annually, or in two, three, four or five years, as the directors may from time to time determine; the latter in the next and last sentence of the section, requiring an amount to be reserved when distribution is made. The intention of the legislature is to be ascertained from the language used, when such language is plain and unambiguous; and the words of the statute are to be understood in their commonly accepted meaning. City of Beardstown v. City of Virginia, 76 Ill. 34; C., M. & St. P. R. R. Co. v. Dumser, 109 Ib. 402, 410; City of Chicago v. McCoy, 136 Ib. 344, 352; Richmond v. Moore, 107 Ib. 429, 436.

In the first case cited, *supra*, the court say :

" Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their

operation.  McCluskey v. Cromwell, 11 N. Y. 601.  The rule ·is well expressed by Johnson, J., in Newell v. The People, 3 Seld. 97, in these words:  'Whether we are considering an agreement between parties, a statute or a constitution, with a view to its interpretation, the thing we are to seek is, the thought which it expresses.  To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order and grammatical arrangement in which the framers of the instrument have placed them.  If, thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning, apparent upon the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed.  In such a case there is no room for construction.' "

Applying these rules to the words " may " and " shall " in section 14, the former must be regarded as permissive and the latter as imperative.  We can conceive of no good reason, nor are we aware of any rule of interpretation, which would warrant the holding that the words " may " and " shall " are used in the same sense in the section, and that imperative.  Therefore we can not sustain the contention that the section requires distribution of surplus at least once in every five years, or that the contracts between the company and appellant, assuming that such contracts contain the charter provision in regard to distribution of surplus, are in violation of section 14.

Counsel for appellant contend that the contracts between appellant and the company are in violation of section 27 of chapter 73 of Hurd's Stat. 1899, p. 978, which is as follows :

" That no life insurance company or association organized under the laws of this State, or doing business within the limits of the same, shall make or permit any distinction or discrimination between insurants of the same class and equal expectation of life in its established rates; nor in the charging, collecting, demanding or receiving of the amount of premium for insurants of the same class and equal expectation of life; nor in the return ratably of premium, dividends or other benefits accruing or that may accrue to such insurants as aforesaid; nor in the terms and conditions of the

contract between such company and the insurants; and such contract of insurance shall be fully and wholly expressed and contained in the policy issued and the application therefor; nor shall any such company or its agents pay, or allow, or offer to pay or allow to any person insured any special rebate or premium, or any special favor or advantage in the dividends or other benefits to accrue on such policy, or promise the same to any person as inducement to insure, or promise to give any advantage or valuable consideration whatever, not expressed or specified in the policy of such company."

The argument, as we understand it, is that a discrimination as to the distribution of the surplus is made in favor of those who survive April 4, 1915, the accumulation period, and against those who may die before that time; that the former are to be regarded as one class and the latter another.

Assuming, for the sake of the argument, that all the policies issued by appellee, including those issued to appellant, contain the charter provisions as to the accumulation period and the distribution of surplus, we can not perceive that any discrimination is made in violation of the section last quoted. Each member or policy holder of the mutual company contracts with the company, which is practically contracting with all the other policy holders, that in the event of his death, whenever that may occur, a sum certain will be paid on his policy by the company, and that if he shall survive April 4, 1915, he will receive an equitable proportion of the surplus. There is no discrimination against any member. Each member, in so far as surplus is concerned, makes the same contract. It is the same in principle as if each member contracted for a sum certain in the event of his death, plus a certain percentage of such sum, in case he should survive April 4, 1915.

Lastly, it is contended that the effect of the provision as to the accumulation period, April 4, 1915, and the provision that no dividend shall be apportioned or paid before the end of that period, is that each policy holder bets with all the others that he will survive April 4, 1915, and therefore the provisions are in violation of section 131 of chapter 38,

Hurd's Rev. Stat. 1899, in respect to gaming contracts. We can not concur in the view that the contracts are wagers or bets within the meaning of section 131. Section 134 of the same chapter is as follows:

"Nothing contained in sections 131 and 132 above, shall be (so) construed as to prohibit or in any way affect any insurance made in good faith for the security or indemnity of the party insured, and which is not otherwise prohibited by law, nor to any contract of bottomry or *respondentia*."

The averments of the bill do not sustain the view that appellant's contracts of insurance were not made in good faith for his security or indemnity; and, as we have already held, they were not prohibited by law. The decree will be affirmed.