Zinn and another, imp., Appellants, vs. Germantown Farmers' Mutual Insurance Company and others, Respondents.

*May 1—May 21, 1907.*

*Mutual insurance companies: Distribution of surplus.*

1. When the proper authorities of a mutual insurance company ordered the distribution to its members of a certain sum from its surplus that sum became separated from the corporate assets and became the property of the several members then existing, payable to each on demand when the amount to which he was entitled had been ascertained.

2. Under the former decision in this action (127 Wis. 412) each member of the defendant company at the time a distribution of surplus was ordered was entitled to share therein in proportion to the amount that he had at any time paid into the treasury, whether during the time of his existing policy or of any prior ones, and without regard to whether his membership had been continuous or broken by intervals, and without considering how much his payments had at any time been in excess of expenses properly chargeable against them and thus had directly contributed to the surplus.

Appeal from a judgment of the circuit court for Washington county: Chester A. Fowler, Judge. *Affirmed.*

This is the same case considered by this court upon de-
murrer to the complaint in *Huber v. Martin,* 127 Wis. 412,
105 N. W. 1031, 1135.   After that decision and on March 19,
1906, the defendant corporation passed a resolution which
ordered the distribution among the members of said company
of $50,000 of the accumulated surplus, but, being uncertain
as to the proper method of distribution, submitted that ques-
tion to the court by an answer stating the facts.   There the
court, by its finding, discloses the following interests: First,
people who had held policies and contributed towards the sur-
plus, but whose policies had lapsed and expired and who were
not policy-holders on March 19, 1906; secondly, those who
had never held policies in the company up to March 19th, but
who did hold at the time of the decree; third, those who held
policies on March 19th, but whose policies had lapsed and
they ceased to be members before the distribution; and fourth,
those who held policies on March 19, 1906, and continued to
do so up to the time of distribution.   The last two classes in-
volved three subdivisions: First, those who had never held but
a single policy, that being in force on March 19th; secondly,
those who had held a series of policies, each connected with
its predecessor without interval; and third, those who had
held policies previously and upon their lapse or termination
had ceased to be members, and, after an interval, had taken
out other policies.   The court, by decree, adjudged that the
$50,000 should be distributed among those who held policies
in the company on the 19th day of March, 1906, and in the
proportions in which each had contributed money to the treas-
ury of the company, whether such contributions had been
under the policy then in force or under prior policies con-
nected with that without interval or separated from it by in-
tervals of nonmembership.   From this judgment two of the
interpleaded plaintiffs jointly appeal; one of them, *William
A. Zinn,* who held a policy on March 19th, still in force at the
time of the decree, but had never held any prior policy; also

*William Luft,* who took his first policy after March 19th and still held it in force at the time of the judgment.

For the appellants the cause was submitted on the brief of *Glicksman & Gold.* They cited 2 May, Ins. (4th ed.) §§ 548, 549, 560 B; *Carlton v. Southern Mut. Ins. Co.* 72 Ga. 371; *Smith v. Hunterdon Co. Mut. F. Ins. Co.* 41 N. J. Eq. 473, 4 Atl. 652; *Comm. v. Mechanics' Mut. F. Ins. Co.* 112 Mass. 192; *Citizens' Mut. F. Ins. Co. v. Sortwell,* 10 Allen, 110; *Herkimer Co. Mut. Ins. Co. v. Fuller,* 14 Barb. 373.

For the respondent insurance company the cause was submitted on the brief of *Sawyer & Sawyer* and *G. A. Kuechenmeister.* To the point that the basis of distribution adopted by the trial court was just and equitable, they cited 21 Am. & Eng. Ency. of Law (2d ed.) 269; *Mayer v. Att'y Gen.* 32 N. J. Eq. 815, 822; *Carlton v. Southern Mut. Ins. Co.* 72 Ga. 371; *Grobe v. Erie Co. Mut. Ins. Co.* 53 N. Y. Supp. 628; *S. C.* 39 App. Div. 183, 57 N. Y. Supp. 290; 1 Pom. Eq. Jur. (3d ed.) 405, 412.

DODGE, J. This action having been once before this court and the rights of the members of the corporation in and to the surplus in its treasury having been exhaustively considered, little remains but to apply the conclusions then reached and declared, which became irrevocably the law of this case.

Turning, then, to the former decision, we find it unambiguously declared that those at any given moment holding policies are the members and all the members of the corporation and the beneficial owners of all its assets; also that the surplus in excess of the needs of the corporation was a proper subject for distribution at any time. We now have, as an additional fact, that the proper authorities did, on March 19, 1906, vote: "There is hereby ordered to be distributed to such members [viz., those entitled thereunto] the sum of $50,000." Who were those members "entitled thereunto"? Those who held policies on March 19, 1906, or any one who might be a member at the time of physical payment of the money to him,

which of course would exclude any one whose membership might terminate after March 19th by lapse or expiration of policy, sale of insured property, or otherwise, before he could induce the treasurer to make such physical payment? Obviously, some considerable time must elapse between the identification of the persons who are to share in such a distribution and the ascertainment of the amount to which each is entitled. Long and complicated computations are essential before the latter fact is known. Again, if the personnel of the distribution must change with each issue of a new, or expiration of an existing, policy, pending such computation new rights of proportion arise daily or hourly and disarrange those already reached, and so delay again the ascertainment of the final fact, thus assuring further changes and an endless chain of arithmetic, so that, in practical operation, a conclusion never could be reached as to the amount to which any member would be entitled. Such conclusion must be still further beyond practical possibility if, as is usually the case, agents remote from the computers are issuing new policies, so that the latter cannot know at any given moment that their figures are based on the existing facts as to membership. All this results in a necessity that some definite time be adopted when the rights of individuals become fixed, after which may be applied the arithmetical process by which they become known. In deference to such necessity the rule has become settled as to stock corporations that a dividend belongs to those who own the stock when it is declared. *Seeley v. N. Y. Nat. Exch. Bank,* 8 Daly, 400; *Jermain v. L. S. & M. S. R. Co.* 91 N. Y. 483; *Hopper v. Sage,* 112 N. Y. 530, 20 N. E. 350; 2 Thomp. Corp. § 2172; Helliwell, Stock & Stockh. § 313. Complete analogy exists between rights of members in a mutual insurance company and stockholders in a stock company in and to such a surplus. *Huber v. Martin,* 127 Wis. 412, 433, 105 N. W. 1031, 1135; 2 May, Ins. (4th ed.) §§ 548, 549; *Korn v. Mut. Ins. Co.* 6 Cranch, 192. Declaring a dividend is nothing but authoritatively deciding to distribute some or all of the

surplus.   We therefore think it entirely logical to apply the foregoing well-established rule, and to hold that on March 19, 1906, $50,000 became separated from the corporate assets and became the property of the several members then existing, payable to each on demand when the amount to which he was entitled had been ascertained.   This is in accord with the holding of the trial court.

The next question, after thus identifying the legal recipients of this fund, is the portion to which each is entitled. Many methods of apportionment are suggested, and in each there can be suggested possible situations resulting in unfairness or offering opportunities for discrimination for and against individuals.   It might not be easy as an original process to conclude which is least objectionable or most equitable.   The trial court apparently considered himself concluded by the former decision of this court, wherein it was said (127 Wis. 438, 105 N. W. 1040):

"In case of its [the corporation] being wound up, the net assets constituted a fund for distribution between the members according to their respective contributions to the company's treasury.   In case of any distribution of its surplus other than following a dissolution, they were entitled to so participate."

Accordingly, after identifying the persons, he ruled that each such person should share in the proportion he had at any time paid into the treasury, whether during the term of his existing policy or any prior ones, and without regard to whether his membership had been continuous or broken by greater or less intervals, and without considering how much of his payments had at any time been in excess of expenses properly chargeable against them, and thus had directly contributed to the surplus.   We agree that no other reasonable meaning can be found in our former declaration, and must therefore approve the conclusion reached.

*By the Court.*—Judgment affirmed.

TIMLIN, J., took no part.