# White, Appellant, v. Provident Life & Trust Co.

*Corporations—Insurance company—Mutual companies—Surplus—Distribution of surplus money among policy holders—Equity —Jurisdiction.*

1. Where the charter of a life insurance company provides: "That all the net profits to be derived from the business of life insurance, after deducting the expenses of the company, shall be

divided pro rata among the holders of the policies of such life insurance equitably and ratably, as the directors of said company shall and may from time to time ascertain, determine and report the same for division," and the company has accumulated in its insurance business a large surplus representing net profits of such business, the directors may not award to the holders of matured policies arbitrary sums based on no calculations by an actuary or by themselves, but they are bound to ascertain and pay over to such policy holders their equitable and ratable proportion of the surplus.

2. Equity has jurisdiction in such a case to compel the distribution of net profits and the allotment to the policy holder of his pro rata share thereof.

Argued March 18, 1912. Appeal, No. 345, Jan. T., 1911, by plaintiff, from decree of C. P. No. 5, Phila. Co., Dec. T., 1909, No. 2066, dismissing bill in equity in case of J. Brinton White v. The Provident Life & Trust Company. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity for an account.

The bill averred that the plaintiff had taken out two policies of life insurance in the defendant company, one for $10,000 on Nov. 28, 1871, and the other for $5,000 on January 18, 1889. The first ran for thirty-eight years and matured on November 28, 1909. The second ran for twenty years and matured on January 18, 1909. The plaintiff set up that the defendant was required under its charter to divide equitably and ratably all the net profits derived from its life insurance business among the holders of the policy; that at maturity of his policy, the defendant had about $8,000,000 of surplus, of which plaintiff's proportionate share would be on the two policies about $2,250, but that defendant had offered him less than $640. The defendant filed an answer in which it denied that the plaintiff was entitled to any other share or part than that offered to him. The court dismissed the bill.

The plaintiff made, inter alia, the following requests for findings of fact:

"IV. The company never attempted at the time of the expiration of the plaintiff's policies, to ascertain, determine and report the net profits which had been derived from the business olf life insurance during the currency of his policies, nor did it equitably or ratably divide the same, or attempt to make any division thereof.

"It is claimed that he was only entitled to receive such amount as it saw fit to pay over to him as profits, without any such ascertainment, determination or reports." Answer. Declined. (6)

"XIII. The so-called 'Surplus or Contingency Reserve' was an amount of profits at the time the two policies in controversy matured." Answer. Declined. (9)

Plaintiff presented the following requests for conclusions of law:

"1. As no account was ever rendered to the plaintiff by the defendant corporation of the amount of net profits realized at the time of the maturity of the policies, it is the duty of the company to render such an account, and an account thereof is decreed." Answer. Declined. (10)

"2. It was the duty of the company at the time of maturity of the policies in question to ascertain and determine the amount of net profits of the corporation at that time and to pay over to the plaintiff an equitable and ratable portion thereof." Answer. Declined. (11).

"IV. The corporation had no right, by resolution, arbitrarily to determine, years before the maturity of the policies, that the plaintiff should receive a certain fixed percentage when the same matured, and should receive nothing further from the company outside of the amount of his policy." Answer. Declined. (13)

"V. The corporation defendant had no right to de· duct from its profits earned at the time of maturity of the policies in question, any sum to cover a future increase of death rate or a future depreciation of value of the securities." Answer. Declined. (14)

"IX. The plaintiff is entitled to a decree ordering the corporation to account to him for the net profits derived from its business of life insurance up to the time of the maturity of his policies, and to pay over to him his equitable and ratable proportion thereof." An- swer. Declined. (18)

*Errors assigned* were (5, 24, 25) conclusions of law in favor of defendant, and decree dismissing the bill, and (6, 9, 10, 11, 13, 14, 18) above rulings on requests.

*John G. Johnson,* with him *William White, Jr.,* for appellant.—We contend that when these policies ma- tured, it was the duty of the company to ascertain the amount of the profits and to divide the same pro rata. We do not contend that, from time to time, during the currency of the policy, there shall be such division; but that, when the relation ceases and the rights of the in- sured are determined, then there must be an ascertain- ment in his favor, of an amount which is to be divided. The division is automatic after the ascertainment.

We are not dealing with the case of a corporation con- tinuing its existence, where the directors may determine how much of the net profits shall be declared by way of determination, and how much shall be retained. We are dealing with a contractural relation of creditor and debtor, in which the debtor agrees that at a certain time the creditor shall receive that which is now refused him, i. e., his share of the net profits.

It is inconceivable that any such interpretation shall be put upon the act as will give to the appellee a right to deny payment of the whole of these net profits or to diminish the payment to such sum as it shall see fit.

With the ending of the business relations of the parties, their rights became finally fixed.

Equity has jurisdiction: Com. v. Bank, 3 Watts & Sargeant 184; Com. v. Bridge Co., 29 Pittsburgh Leg. 126; West Chester & Phila. R. R. Co. v. Jackson, 77 Pa. 321; Telford & Franconia Turnpike Co. v. Gerhab, 22 W. N. C. 175; McLean v. Pittsburgh Plate Glass Co., 159 Pa. 112; Fidelity Trust Co. v. Lehigh Valley R. R. Co., 215 Pa. 610; Dock v. Cordage Co., 167 Pa. 370.

The case of Carlton v. the Southern Mutual Insurance Company, 72 Georgia 371, JACKSON, C. J., is similar to the case at bar, the difference being that in the Georgia case the directors of their own volition came into court and asked who were entitled to the accumulation of a very large surplus. Many of the fire insurance policies had long since matured and the court held that those whose premiums had contributed towards raising the fund were entitled to their proportionate share of their own.

*H. Gordon McCouch,* of *Dickson, Beitler & McCouch,* and *Charles E. Morgan,* with them *Joseph B. Townsend, Jr.,* for appellee.—We cannot impress too earnestly on the court the true nature of the so-called surplus or contingent reserve. It is not, as claimed by appellant, a surplus over the amount considered by the directors necessary to provide against outstanding risks. It is the surplus of the company's reserve over the amount required by the State law, which the directors, in the honest exercise of the discretion vested in them by law, have determined to be necessary.

The right which appellant sets up is a purely contractual one between appellant, the other policy holders and the company. Although the terms of the alleged contract are set out in the Act of February 18, 1869, P. L. 194, this act is not one which concerns the public at large. It merely defines the rights of the policy-

holders in this particular company as against one another and as against the company. The language of the act is therefore to be construed according to the ordinary rules of construction applicable to any ordinary contract: McKeever v. Westmoreland Coal Co., 219 Pa. 234.

The parties to this contract having construed it, in accordance with its natural, its literal, and its equitable meaning for 40 years past, surely this court will not now place a different interpretation on it at the suit of one who has already received in advance all that to which he now claims he is entitled: Provident Life & Trust Co. v. Durham, 212 Pa. 68.

The cases are conclusive against the right of appellant to the accounting prayed for in his bill: Greeff v. Equitable Life Assur. Society, 160 N. Y. 19 (54 N. E. Repr. 712); Equitable Life Assur. Soc. v. Brown, 213 U. S. 25 (29 Sup. Ct. Repr. 404); Mutual Life Ins. Co. v. Girard Life Ins. Annuity & Trust Co., 100 Pa. 172.

OPINION BY MR. JUSTICE POTTER, October 14, 1912:

The plaintiff is a policy holder in the defendant company. He carried to maturity two endowment policies, one for ten thousand dollars, taken out November 28, 1871, which ran for thirty-eight years, and became payable November 28, 1909. The other policy was for five thousand dollars, taken out January 18, 1889; ran for twenty years, and became payable January 18, 1909.

As appears from its charter, the defendant company is authorized to carry on not only the business of life insurance, but also that of a trust company, and to receive deposits of money and other property and to act as trustee, guardian, executor, administrator, &c. But the charter contemplates that its life insurance business shall be conducted separate and apart from its other business, and upon a purely mutual basis. The stockholders of the company as such are to derive no profit from the insurance business. The Act of February 18,

1869, P. L. 194, which is a supplement to the act of incorporation, provides "That all the net profits to be derived from the business of life insurance, after deducting the expenses of the company, shall be divided pro rata among the holders of the policies of such life insurance, equitably and ratably, as the directors of said company shall and may, from time to time, ascertain, determine, and report the same for division."

The term "net profits" as applied to the business of life insurance is not strictly accurate, but its use by the framers of the law was evidently meant to apply to such funds as might arise from the receipts of the company in excess of the cost of doing business, and of the maintenance of a reserve fund, which will provide for the payment of claims on account of deaths, or the maturing of the policies. The surplus is a fund entirely apart from the reserve. The solvency of the company depends upon maintaining the integrity of the reserve fund, but the surplus may be distributed without in any way affecting the ability of the company to meet its obligations upon its policies as they mature. When therefore the law requires all the net profits to be divided pro rata among the policy holders, it obviously refers to items of surplus. These items arise from savings upon the assumed rate of mortality, from the excess of interest received over the assumed rate, from the loading for expenses, and the gains from lapsed and surrendered policies. All such items we understand go to make up the surplus, or the so-called net profits of the business and it is from this source that all so-called dividends and returns to the policy holders, in excess of the face of the policy, are made.

In the present case it appears that upon the date of the maturity of the plaintiff's policies, the defendant company had, in addition to its lawful reserve, a surplus fund of nearly eight million dollars. The plaintiff claims that under the law it became the duty of the directors to ascertain and report the pro rata share of

this surplus, which was due to him under his policies, under an equitable and ratable division of the surplus. He alleges that the directors refused to give him a statement of his proportionate share of the surplus, or to pay him his pro rata share, and he therefore filed this bill for an accounting.

The answer filed on behalf of the company admitted that the appellant was the holder of the policies maturing as alleged in the bill; that under its charter the company was required to divide among the policy holders the profits from insurance as set out in the bill, and that its surplus was about eight million dollars. But that appellant was entitled to anything more than had been offered and paid to him without prejudice, was denied. It was further asserted that the action of the directors in dividing, or in refusing to divide, the surplus, was not subject to review or modification by the court. Upon issue joined, the case was heard in the court below, and it was held that the appellant was not entitled to the relief for which he prayed, and that the bill should be dismissed. No opinion was filled. Exceptions filed by the plaintiff to the findings of the trial judge were overruled, and a decree was entered, dismissing the bill. Plaintiff has appealed, and assigns for error the overruling of various exceptions filed in his behalf, and the entry of the final decree.

The law clearly directs that the net profits are to be divided among the policy holders, equitably and ratably, and it clearly contemplates that the directors shall from time to time ascertain, determine and report what such an equitable division should be. It appears from the testimony of the president of the company, Mr. Wing, that when appellant's policies matured in 1909, no attempt was made to ascertain in any accurate way the amount of net profits then subject to equitable division, or to fix the amount of his proprotionate share thereof. All that was done with respect to the matter was under the terms of a general resolution passed by the board

early in the year, declaring a dividend of one-tenth of
one per cent. on the face of maturing endowment poli-
cies, for each full year from the date of the policy to its
maturity.    Similar action was taken each year from
1906.   Mr. Wing testified that at the close of the year
1908, the reserve held by the company, computed by the
standards of the Insurance Department of Pennsylva-
nia, being the sum necessary to reinsure all risks,
was $57,000,312.   In addition, the company had a
surplus or contingent reserve of $7,831,007.86.   He
further testified that there was no disposition to dis-
pute the fact that this so-called surplus or contingent
reserve belongs to the policy holders, when the directors
can determine in what proportion it shall be divided.
The witness stated that the percentage allotted to en-
dowment policies, one-tenth of one per cent. a year, upon
the face of the policy, had remained the same since 1906.
It was, he said, an effort on the part of the company to
recognize that there was something due to a man with-
drawing in that way.   On cross-examination Mr. Wing
said that the dividend of one-tenth of one per cent. for
each year of the life of the maturing policies, was an
arbitrary figure fixed without any special calculation.
The resolution of the board of directors was made in
such a way that the longer the policy had run, the more
the policy holder got.   On re-examination, the witness
said that if the company had reinsured its risks, the sur-
plus fund of $7,831,007.86 would not have gone to the
stockholders of the defendant company, but he said that
he had never taken up the subject of its division.

Appellant contends that the amount which the direc-
tors thus arbitrarily allotted to him was not based upon
any reasonable calculation as to the amount of his share
in the net profits, and did not therefore constitute such
an equitable and ratable division of the profits as is con-
templated by the terms of the charter of the defendant
company.

In the face of the clear mandate of the law requiring all the net profits to be divided pro rata among the policy holders, we are unable to see how the directors can justify their failure to ascertain and adopt a method which would with at least approximate accuracy distribute the profits equitably and ratably as required by the act of assembly. While much must be left to the discretion and judgment of the directors in such matters, yet it is a discretion which must be legally exercised. In Grange v. Insurance Co., 235 Pa. 320, (330) we said: "We have no hesitation in saying that whenever a proper case is made out, a policy holder is entitled to an account, and is not to be dismissed with the statement that he is bound by the action of the trustees of the company." In that case the policy provided that the accumulated surplus should be "apportioned equitably" among the policies completing the designated period of payment of premiums. The directors of the company, under guidance of calculations made by the actuary, made an apportionment which was claimed by the company to be equitable, and it was held that the plaintiff had failed to show that it was not so. But in the case at bar, there is no evidence to show that the directors attempted to make an "equitable and ratable" division of all the net profits. The amount allotted to maturing endowment policies was admittedly an arbitrary figure, based on no calculations by an actuary or by themselves. It is admitted that appellant is entitled to receive an "equitable and ratable" proportion of the net profits. But there has been no attempt to ascertain what that proportion is. The company offers him in lieu thereof a sum arbitrarily fixed without calculation or accurate consideration of its effect upon the net profits in connection with the claims of other policy holders. It would seem that appellant is entitled to have the amount due him accurately ascertained, even at the risk of causing additional trouble in procuring the necessary calculations, and in making the payments required. The ap-

pellant being the holder of matured policies, is in so far as those policies are concerned, severing his connection with the company. Unless he now secures his just and proper share of the profits, he can never get them. Whatever the fund in question may be called, whether surplus or contingent reserve, its office must be the ultimate protection of the policy holders. However much of it may be retained during the running of a policy, at its maturity the policy holder is entitled to his pro rata share of the fund which has been retained for his benefit. Unless he does thus participate in it, the retaining of the surplus is not only a vain thing, in so far as he is concerned, but it is a detriment in that his so-called annual dividends have been reduced in order to build up a surplus in which he does not share.

Counsel for appellee cite in their argument the case of Provident Life & Trust Co. v. Durham, 212 Pa. 68, to sustain their contention that the "surplus and contingency fund" belongs to the company and not to the policy holders. The distinction is not important here, for appellant does not claim to be the owner of any particular part of the surplus fund, but he contends that the directors are bound to ascertain the amount if any of his interest in the "net profits," and to award to him such dividend as he is entitled to. It will be remembered that the president of the company, in his evidence, disclaimed any disposition to dispute the fact that this so-called surplus belongs to the policy holders, when the directors can determine the proportion in which it shall be divided. The decision in the case cited involved nothing but the question of the right of the State to tax the company's reserve, as a fund held in trust for the policy holders. It was held that in so far as the right of taxation was concerned, the title to the insurance assets was vested in the company, in its own right. The principle there announced has no bearing upon the question now under consideration.

Three other decisions are cited in support of the decree of the court below: Graeff v. Assurance Society, 160 N. Y. 19; Equitable Life Assurance Society v. Brown, 213 U. S. 25, and Mutual Life Ins. Co. v. Trust Co., 100 Pa. 172. The first of these, Graeff v. Assurance Society, was a suit at law brought against the Equitable Life Assurance Society subsequent to the adoption of the New York Act requiring actions against insurance companies in which accountings are demanded, to be instituted only by leave and in the name of the Attorney General. The court held that under the New York statute, the plaintiff was not entitled to an accounting. No such barrier as the New York statute presents to the claim of the plaintiff, in that case, is to be found in this State.

In the case of Equitable Life Assurance Society v. Brown, 213 U. S. 25, the holder of the policy was entitled to participate in the distribution of the surplus "according to such principles and methods as may from time to time be adopted by this society for such distribution, which principles and methods are hereby ratified and accepted, by and for any person who shall have or claim any interest under this contract." Mr. Chief Justice PECKHAM held that the terms of the contract prevented the policy holders from claiming the right to an accounting, or to compel the distribution of the surplus fund in any other manner than that provided for in the contract.

The case now before us is clearly distinguishable, in that the policy contains no such provision as that upon which the decision in the Brown case turned. And further, in the fact that in the present case the directors of the company awarded merely an arbitrary percentage determined without accurate calculation.

The decision in Mutual Insurance Co. v. Trust Co., 100 Pa. 172, has no bearing upon the question here involved. It was there held that the law would not apply an undivided surplus, out of which the insured might

be entitled to have a dividend declared and paid to him, to the payment of a premium falling due in advance of the declaration of such a dividend by the board of directors. The right of a policy holder by proceeding in equity to compel the distribution of net profits, and the allotment to him of his pro rata share thereof, was neither raised nor considered in that case. A sound illustration of the principle of law here involved is found in Pierce v. Assurance Society, 145 Mass. 56, where it was held that the holder of a maturing tontine policy was entitled to an accounting to determine what share of the reserve and profits was equitably apportionable to him. DEVENS, J., said (p. 58) : "It is the contention of the defendant that the plaintiff is bound by the apportionment made by its officers in the discharge of their duties, unless it shall be shown at least that they did not act in the exercise of an honest discretion and in good faith. We find no words in the policy indicating that the decision of the defendant is to be conclusive, and the words by which the defendant agrees 'equitably' to apportion to the plaintiff's policy its share of the profits bind the defendant to make the apportionment, and imply that, in any proper proceeding, it may be inquired whether it has fulfilled this part of its contract." It will be borne in mind that in the case at bar an equitable division of the net profits is required by the law of the incorporation of the defendant company.

In Uhlman v. Insurance Co., 109 N. Y. 421, which was a suit for an accounting under a tontine policy, Mr. Justice PECKHAM said (p. 432) : "We do not, however, accede to the claim of the defendant herein to its full extent, ...... which is, that the apportionment, as made by the defendant, is absolutely, and at all events, conclusive upon the policy holders. We hold that, under the terms of this policy, the apportionment was to be equitably made, and, in the first instance, by the defendant's officers or agents. But, inasmuch as the agreement is that the apportionment shall be an equitable

one, the question of what is an equitable one, all the facts and circumstances being known, may be one over which the courts have supervision. Prima facie, the apportionment, as made by the defendant, should be regarded as a compliance with the terms of the policy, or, in other words, should be regarded as an equitable apportionment. ...... The plaintiff, and all others similarly situated, have the right, upon proper allegations of fact showing that the apportionment made by the defendant is not equitable, or has been based upon erroneous principles, to have a trial and make proof of such allegations, and, if proved, the court will declare the proper principles upon which the apportionment is to be made, so as to become an equitable apportionment."

Counsel for appellee suggest that a mathematical method of computing the equitable and ratable division of net profits among policies, as they mature, would be impracticable. Why this should be so is not apparent. A mutual insurance company is essentially a great savings institution, and its methods of accounting might follow those of other savings institutions, in keeping an account with each policy holder, so that a statement of the condition of the policy might be furnished when required. Or the policies might be grouped into classes of those issued in the same form, and accounts kept with the classes. This is a matter for accountants to determine. Surely the business of insurance is not one which is beyond the methods of accuracy in the keeping of its accounts with its policy holders, or in the determination of their fair share of the savings of the business.

We are of opinion that the plaintiff is entitled to a decree requiring the defendant corporation to state an account showing the net profits it held, derived from its business of life insurance at the time of the maturity of his policies, and to ascertain the amount of and pay over to him his equitable and ratable proportion thereof.

Without disposing in detail of all the assignments of error, it is sufficient to say that the fifth, sixth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, eighteenth, twenty-fourth and twenty-fifth assignments, which substantially cover the case, are sustained. The decree of the court below is reversed, and the bill is re-instated. It is further ordered that the record be remitted to the court below for further proceedings in accordance with this opinion.

