ORDER OF RAILWAY EMPLOYEES, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110521.   Promulgated August 24, 1943.

*Hartley F. Peart, Esq., Howard Hassard, Esq.,* and *Homer H. Tooley, C. P. A.,* for the petitioner.
*Samuel Taylor, Esq.,* for the respondent.

610

OPINION.

Mellott, *Judge:* The issue is: Under which section of the revenue act shall petitioner be taxed? Respondent has taxed it under section 204 (a) of the Revenue Act of 1936 [2] and similar provisions of the Revenue Act of 1938 and the Internal Revenue Code as an insurance company other than life or mutual. Petitioner contends that it is taxable under section 201 (a) [3] as a life insurance company, though it places its chief reliance upon, and devotes most of its brief to establishing, the fact that it is a mutual insurance company and hence taxable under section 207 (a).[4]

In its reply brief petitioner concedes that it does not have the necessary reserve funds held for the fulfillment of life policies to entitle it to classification as a life insurance company under recent decisions of this tribunal. *Independent Life & Accident Insurance*

---

[2] SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

(a) IMPOSITION OF TAX.—

(1) IN GENERAL.—In lieu of the tax imposed by sections 13 and 14, there shall be levied, collected, and paid for each taxable year upon the normal-tax net income of every insurance company (other than a life or mutual insurance company) a tax of 15 per centum of the amount thereof.

[3] SEC. 201. TAX ON LIFE INSURANCE COMPANIES.

(a) DEFINITION.—When used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident isurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

[4] SEC. 207. MUTUAL INSURANCE COMPANIES OTHER THAN LIFE.

(a) APPLICATION OF TITLE.—Mutual insurance companies, other than life insurance companies, shall be taxable in the same manner as other corporations, except as hereinafter provided in this section, and except that they shall not be subject to the tax imposed by section 14, and except that the normal tax imposed by section 13 shall be at the rate of 15 per centum instead of at the rates provided in such section, and such normal tax shall be applicable to foreign corporations as well as domestic corporations; but foreign insurance companies not carrying on an insurance business within the United States shall be taxable as other foreign corporations.

*Co.*, 47 B. T. A. 894; *United Life Insurance Co.*, 47 B. T. A. 960; *General Life Insurance Co.*, 1 T. C. 555. See also *Mothe Burial Benefit Life Ins. Co.* v. *Fontenot*, 46 Fed. Supp. 978. Cf. *Swift & Co. Employees Benefit Association*, 47 B. T. A. 1011; *National Protective Insurance Co.* v. *Commissioner*, 128 Fed. (2d) 948, affirming 44 B. T. A. 978; certiorari denied, 317 U. S. 655; and *First National Benefit Society* v. *Stuart*, 134 Fed. (2d) 438. The first two cases cited are pending upon appeal in the Circuit Court of Appeals for the Fifth Circuit. *General Life Insurance Co.*, *supra*, was reversed by a divided court (C. C. A., 5th Cir., July 8, 1943). With all due deference to the court, we adhere to the views heretofore expressed and hold that, since petitioner did not maintain reserves on its health and accident policies on any actuarial basis and inasmuch as it was not "engaged in the business of issuing life insurance and annuity contracts" in the taxable years, it can not be classified as a life insurance company.

But is petitioner taxable as a mutual insurance company other than life? Respondent argues that it is not, pointing out that its life and accident and health policyholders pay fixed and level cash premiums, that it is not specifically obligated to distribute to its policyholders each year the excess of the premiums over the cost of the insurance, and that it is engaged to a limited extent in the life insurance business. The existence of the first circumstance is not disputed; but that does not prevent taxing petitioner as a mutual insurance company. *Ohio Farmers' Indemnity Co.*, 36 B. T. A. 1152; affd., *Ohio Farmers' Indemnity Co.* v. *Commissioner*, 108 Fed. (2d) 665.

The second point raised by the respondent and the real basis of his determination is: "It is of the essence of mutual insurance that the excess in the premium over the actual cost as later ascertained shall be returned to the policyholder," *Penn Mutual Life Insurance Co.* v. *Lederer*, 252 U. S. 523; *New York Life Insurance Co.* v. *Bowers*, 283 U. S. 242. Recognizing that the Supreme Court has not laid down any rule requiring that a "dividend" or refund of the excess be declared or paid in the year in which the premium is paid, respondent insists that refund to the class of policyholders must be mandatory. He argues that this petitioner is under no obligation to pay any dividend to any of its policyholders at any time. He also points out that there were many lapsed policies during the period from 1932 to 1940 and under petitioner's contract with the holders of such policies they forfeited any interest which they had therein. He argues that this circumstance prevents petitioner from being a true mutual.

Petitioner points out that its articles of incorporation expressly provide that it is a mutual company, "not formed with a view to

pecuniary gain or profit to its members"; that it is required "* * * from time to time to distribute to the members any surplus of net income which in the judgment of the board of directors it is not necessary to retain for the purposes of the corporation"; that its members are the owners of the entire surplus or reserve and they, by appropriate action, could have compelled distribution to themselves at any time; that the fact that holders of lapsed policies forfeited their interest in the surplus does not cause the company to become other than a mutual; and that it should not be denied classification as a mutual merely because its directors, in the exercise of their sound discretion, failed to authorize any distribution to be made during the years 1932 to 1940, inclusive.

The evidence was directed largely toward showing why dividends had not been declared. None was adduced indicating that the directors had acted in bad faith or had been guilty of any abuse of discretion. Without attempting to summarize the evidence, it may be stated generally that the factors which influenced the directors in refraining from declaring a dividend were: (1) The near catastrophe which resulted from the economic depression following the 1931 dividend and which substantially reduced the surplus available for meeting contingencies; (2) the possibility of a recurrence of similar economic depressions; (3) uncertainties, particularly since 1939, created by the second World War; (4) the extra risk involved in issuing accident policies having no cut-off on monthly payments other than the duration of the injury; (5) the increased risk resulting from issuing policies providing for 16 monthly payments in connection with sickness instead of 6 as theretofore; (6) the always present possibility of epidemics; and (7) the possibility that a strike or reduced employment among railroad employees, which constituted approximately 90 percent of petitioner's membership, would result both in increased claims and in decreased revenue.

In *Penn Mutual Life Insurance Co.* v. *Lederer, supra,* it was stated: "In a mutual company, whatever the field of its operation, the premium exacted is necessarily greater than the expected cost of the insurance, as the redundancy in the premium furnishes the guaranty fund out of which extraordinary losses may be met." In a mutual company some payment to the policyholder, representing such excess, is ordinarily made every year, though, as the court pointed out, it "is rarely made within the calendar year in which the premium * * * was paid."

Provisions are usually contained in the charter, articles of incorporation, or policies of a mutual insurance company, vesting in its board of directors discretionary power to determine when the surplus income is to be divided among the members or classes and the proportion thereof. *McKean* v. *Biddle,* 37 A. 528; 181 Pa. St. 361;

*Rothschild* v. *New York Life Insurance Co.*, 97 Ill. App. 547; *Greeff* v. *Equitable Life Assurance Society of the United States*, 160 N. Y. 19; 54 N. E. 712; *Buck* v. *Ross*, 240 N. W. 858; *White* v. *Provident Life & Trust Co.*, 85 A. 463; 237 Pa. 375; *Spruance* v. *Farmers' & Merchants' Ins. Co.*, 9 Colo. 73; 10 Pac. 285. Petitioner's articles contain such a provision, which has been set out above. The power given to the directors to exercise their judgment in determining how much of "the surplus of net income  *  *  *  it is not necessary to retain for the purposes of the corporation" clearly vests in them a discretion. Since the record is devoid of any evidence indicating that they acted in bad faith or arbitrarily, fraudulently or capriciously, we are of the opinion that the retention of the amounts shown by our findings does not *ipso facto* cause petitioner to become other than a mutual company. " *  *  *  an insurance company, acting bona fide, has the right to retain  *  *  *  an amount sufficient to insure the security of its policyholders in the future as well as the present, and to cover any contingencies that may arise or may be fairly anticipated." 29 American Jurisprudence, par. 64. *Greeff* v. *Equitable Life Assurance Society of the United States, supra.* Nor do we think it can be said, as urged by respondent, that petitioner "is under no obligation to pay any dividend to any of its policyholders at any time." They, collectively, are its owners. No individual, class. or group other than the policyholders (members) have any interest in, or power over, it. *Equitable Life Assurance Society of the United States* v. *Bowers*, 87 Fed. (2d) 687; *Penn Mutual Life Insurance Co.* v. *Lederer, supra; Spruance* v. *Farmers & Merchants Insurance Co., supra; Buck* v. *Ross, supra.* It has no capital stock and no shareholders. The members, and they alone. are entitled to all dividends, whether resulting from current operations or paid upon dissolution and whether they are true dividends or only excess premiums paid.

There is no specific time fixed by the revenue act or indicated by the court decisions within which the excess premiums must be returned. The disadvantages of a yearly distribution were stated by the court of appeals of New York in *Greeff* v. *Equitable Life Assurance Society of the United States, supra,* in the following language:

 *  *  * The adoption of principles or methods for the distribution of its surplus by which it was all distributed each year would not only place in jeopardy the security of every existing policy, but its tendency would be to prevent any increase of its business by obtaining new policies, and thus diminish its future receipts. It was essential to the prosperity of the defendant, and consequently to the security of its policyholders, that its business in the future should be increased, or at least maintained, as upon its maintenance its continued solvency and ability to pay future losses principally depended. No prudent person would be inclined to take a policy in a company which had so improvidently conducted its affairs that it only retained a fund barely sufficient to pay its present liabilities, and therefore was in a condition where any change,

by the reduction of interest upon, or depreciation in the value of its securities, or any increase of mortality, would render it insolvent and subject to be placed in the hands of a receiver  *  *  *.

We do not intimate that Congress intended to allow a mutual insurance company to accumulate and hold, throughout its existence, all of the excess of premiums over cost. It clearly belongs to the policyholders and should be returned to them. Respondent's argument, based upon the testimony of petitioner's actuary, is not wholly without substance. It may be, if the facts demonstrate that a company organized as a mutual has ceased to operate as one, that the privilege of returning its income as a mutual may be denied. As we view the evidence and the stipulated facts in this proceeding, however, a finding that petitioner had ceased to be a true mutual would not be justified.

Respondent's argument, based upon the fact that those who had allowed their policies to lapse will probably never receive back any portion of the amount paid in by them, may be noticed briefly. Some courts hold that all policyholders who contribute to the accumulated surplus of a mutual insurance company are entitled to a proportion thereof whether they are policyholders at the time of distribution or not. *Smith* v. *Hunterdon County Mutual Fire Insurance Co.*, 41 N. J. E. 473; 4 Atl. 652; *U. S. Life Insurance Co.* v. *Sprinks*, 96 S. W. 889; rehearing denied, 103 S. W. 335; writ of error dismissed, 209 U. S. 539. Others hold that it is the property of the members at the time the distribution is ordered. *Zinn* v. *Germantown Farmers' Mutual Insurance Co.*, 111 N. W. 1107; 132 Wis. 86; *Huber* v. *Martin*, 105 N. W. 1031; 127 Wis. 412. Opinion is expressed in 29 American Jurisprudence, par. 79, that the latter rule is "the better" where a distribution is being made upon dissolution. No California decisions on this question have been brought to our attention or found. For present purposes we assume that the provision in the policies issued by petitioner is valid and has the effect of forfeiting all their rights to receive any of the accumulated surplus. It may be that this constitutes "a departure in some degree from the original conception of mutual insurance as simply co-operative self insurance at cost *  *  *." *White Fuel Corporation* v. *Liberty Mutual Insurance Co.*, 46 N. E. (2d) 548; but, as the court there remarked, "the change may well have been thought necessary in order to give financial stability and continuity to mutual companies equivalent to that given to stock companies by their capital stock and thus to assist the mutual principle as a whole to survive in the insurance business." However that may be, we are of the opinion that the fact that some policyholders may not receive their proportion does not prevent the company from being a mutual. This view finds some support in *Penn*

*Mutual Life Insurance Co.* v. *Lederer, supra.* In discussing one type of dividends the court pointed out that it:

* * * represents in part what clearly could not be regarded as a repayment of excess premium of the policyholder receiving the dividend. For the "share of the forfeiture" which he receives is the share of the redundancy in premium of other policyholders who did not persist in premium payments to the end of the contract period.

While the quoted language was not used in discussing the question now before us, it indicates that the court was cognizant of the fact that mutual companies do sometimes distribute to their policyholders amounts attributable to payments made by persons who had permitted their policies to lapse. In our judgment respondent's contention that petitioner may not be taxed as a mutual on this ground is unsound.

Respondent's argument based upon the fact that petitioner is engaged to a limited extent in the life insurance business is not too clear. He says: "To come under Section 207 an insurance company must not only be a mutual company, but must be in no way engaged in the life insurance business. Hence, even though that part is a small part of its total business, it cannot come under Section 207." He cites *Baltimore Equitable Society* v. *United States,* 77 Ct. Cls. 566; *Baltimore Equitable Society* v. *United States* (Ct. Cls.), 17 Fed. Supp. 188; and *Swift & Co. Employees Benefit Association, supra.* In our judgment none of the cited cases support his contention. The first two merely held that a company, originally exempt from tax because it was a "Farmers' or other mutual * * * fire insurance company," lost its exemption when it issued policies to nonmembers since the provisions for exemption could not be applied to a company "that was partly mutual and partly not." The other case involved a nonstock association of employees of Swift & Co., the members of which, as pointed out in the opinion, had no interest in the surplus of the company or "right to participate beyond the specific insurance risk for which * * * [the association was] obligated." It was therefore held that the association was not entitled to classification as a mutual insurance company. Since it also did not meet the requirements made by section 201 for taxation as a life insurance company, it was properly held to be taxable under section 204.

Respondent construes some of the language used in the last cited case as a holding that a mutual insurance company may be taxed under section 207 only if it "be in no way engaged in the life insurance business." If the language used is subject to such interpretation, it does not represent the present view of this tribunal. It is manifest Congress intended to provide for the taxation of all insurance companies in Supplement G (section 201 *et seq.*) of the Internal Revenue Code and the various revenue acts. It divided them into three groups—life

insurance companies (section 201), mutual insurance companies other than life insurance companies (section 207), and insurance companies other than a life or mutual insurance company (section 204). "Every insurance company other than a life or mutual insurance company" is to be taxed under section 204. Cf. article 204 (a)–1 of Regulations 94. There is nothing in the act or regulations to indicate that a mutual company would lose its classification as a mutual insurance company if it should write combined life, health, and accident policies. The test is mutuality rather than type of business. Of course, if it is a life insurance company as defined by section 201 (a.), it is to be taxed as such; for section 207 (a) specifically excludes life insurance companies from the mutual companies which are to be taxed under it.

The Commissioner erred in determining that petitioner is taxable under section 204. Uncontested adjustments make it necessary that a recomputation of the deficiency be made.

*Decision will be entered under Rule 50.*