PROPERTY OWNERS MUTUAL INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51662.    Filed August 23, 1957.

*Charles R. Johnston, Esq.,* and *Nicholas S. Kiefer, Esq.,* for the petitioner.

*George E. Van Roekel, Esq.,* for the respondent.

1010

OPINION.

OPPER, *Judge:* This proceeding is in all respects similar to *Citizens Fund Mutual Fire Insurance Co.*, 28 T. C. 1017. In addition to the question of guaranty fund certificates decided in *Citizens Fund Mutual Fire Insurance Co.*, *supra*, respondent in both cases makes a contention, the scope of which we find something less than clear. Whether it is intended merely as a makeweight to the "guaranty fund" argument or as a separate contention, we are unable to discern. In neither aspect, however, do we find it persuasive.

In order to assure a fair statement of respondent's position, we quote in the margin excerpts from his brief, which should be self-explana-

tory.[1]  These arguments appear to us to amount to no more than the statement that since mutual companies and stock companies have certain similarities, under the law of Minnesota and most other States in which petitioner has qualified to carry on business, there can be no such thing as a mutual company as distinguished from a stock company.  Reduced to its lowest terms, this contention would seem to be that since both stock and mutual companies are in the insurance business, and hence that many legal requirements as to one resemble the other, the similarities outweigh the differences and only the similarities will be respected.  To refute this proposition it seems to us necessary only to state it.

A good deal of evidence was introduced tending to show that petitioner's premiums were larger than its costs, particularly in the new venture of insuring turkey raisers, with the consequence that a surplus for contingencies and losses was created and from time to time increased.  We take it that respondent is urging that this failure to sell insurance at cost, or at least to redistribute the surplus currently to its policyholders, prevents it from being a mutual insurance company.  Basically this contention contradicts his principal argument. Petitioner is shown to have required the funds represented by the guaranty fund certificates to create a sufficient reserve to provide to its policyholders reasonable protection against loss.  The certificates cannot safely be retired until this protection is available from other sources.  But when what would otherwise be a lack of reserves is sought to be remedied by the gradual accumulation of a book surplus, respondent objects that insurance is not being sold at cost.

---

[1] * * * There are a number of statutes in the law of the State of Minnesota that can apply to both types of companies.  See sections 66.04, 66.09, 60.29, and chapter 65, Minn. Stat. Anno.  The provisions of chapter 65 of Minn. Stat. Anno., which chapter is entitled "Fire Insurance Companies," relate to a great extent to both stock and mutual fire insurance companies.  States other than Minnesota have similar statutes.  Anno. Laws of Mass., chapter 175, section 99 ; Mich. Stat. Anno., chapter 242, section 24.422.

A mutual insurance company may write the same type of insurance and may be required to maintain the same reserve that a stock insurance company has to maintain.  Sections 66.04, 66.09, Minn. Stat. Anno.  Both stock and mutual fire insurance companies use the same standard type of fire insurance policy in the State of Minnesota.  Section 65.01, Minn. Stat. Anno. ; Tr. 106.

Respondent admits that there are some differences in the laws relating to the formation and operations of stock and mutual fire insurance companies, but submits that these differences are few and of an inconsequential nature.  * * * There is a difference in the method of incorporating a mutual insurance company and a stock insurance company * * * A mutual company must inform its policyholders in their policies in regard to the time and place of the annual meeting.  If the policyholder is contingently liable for an assessment equal to the amount of one annual premium, a provision to this effect must be included in the policy.  However, assessments rarely are made.  Also, a mutual insurance company can issue a nonassessable policy if it meets certain conditions.  See section 66.04, Minn. Stat. Anno. * * *

Petitioner's requested finding of fact No. 1 also states that in each foreign state in which the petitioner was licensed to do business, it operated under the provisions of law applicable to foreign mutual insurance companies of this kind.  If the provisions of these laws are analyzed, it will be learned that in many instances the provisions of law that apply to foreign mutual insurance companies are the same laws that apply to the domestic stock insurance companies incorporated in those states.

However that may be, the contention was made and answered in *Order of Railway Employees*, 2 T. C. 607, 615, where we said:

"an insurance company, acting bona fide, has the right to retain * * * an amount sufficient to insure the security of its policyholders in the future as well as the present, and to cover any contingencies that may arise or may be fairly anticipated." 29 American Jurisprudence, par. 64. * * * The members, and they alone, are entitled to all dividends, whether resulting from current operations or paid upon dissolution and whether they are true dividends or only excess premiums paid.

As in *Order of Railway Employees*, *supra*, petitioner's officers testified at length as to the reasons for maintaining reserves, particularly with respect to the turkey insurance. Petitioner's situation and their conclusions from it, which are more fully set forth in our findings, appear to us to be reasonable and certainly to eliminate any possibility that in this case we could conclude that petitioner's failure to distribute larger dividends was due to bad faith on the part of its officers. It may be that we should here reiterate a warning expressed in *Order of Railway Employees*, *supra*, at 616:

We do not intimate that Congress intended to allow a mutual insurance company to accumulate and hold, throughout its existence, all of the excess of premiums over cost. It clearly belongs to the policyholders and should be returned to them. Respondent's argument, based upon the testimony of petitioner's actuary, is not wholly without substance. It may be, if the facts demonstrate that a company organized as a mutual has ceased to operate as one, that the privilege of returning its income as a mutual may be denied. As we view the evidence and the stipulated facts in this proceeding, however, a finding that petitioner had ceased to be a true mutual would not be justified.

Under these circumstances and on this record, we cannot approve respondent's determination that in the years in question petitioner was not a mutual insurance company.

*Decision will be entered for the petitioner.*

*Charles R. Johnston, Esq.*, and *Nicholas S. Kiefer, Esq.*, for the petitioner.
*George E. Van Roekel, Esq.*, for the respondent.