

253

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-5052
Re: Does the proposed form of parti-
cipating clause or endorsement
to be attached to life policies
by a domestic stock life insur-
ance company violate any of the
provisions of Articles 4729, 4753,
5036 or 5053, Vernon's Annotated
Civil Statutes or Article 578,
Penal Code, or any other appli-
cable provisions? And related
matters.

We have your letters of January 15, and February 15,
1943, requesting the opinion of this department on the above
stated matter. We quote from your letter of January 15, 1943,
as follows:

"....

"We desire your opinion as to whether such
form violates any of the provisions of Articles
4729, 4753, 5036, and 5053, R.C.S., or Article
578, Penal Code, or any other applicable statu-
tory provisions; and as to whether this Board has
discretion to refuse to approve and file such
form, upon any of the grounds of objections
hereinafter stated.

"....

"Our principal objections to the clause are
as follows:

"(1) Article 5053, R.C.S., and P.C. Arti-
cle 578 define certain actions as constituting

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

forbidden discrimination and rebating, among which acts are the offer, sale, or other disposition of stock, or other rights and securities not expressed in the policy as an inducement to insurance. It seems to us that the clause, here under consideration, primarily violates the spirit and comes within the meaning if not the letter of Article 5053 and P. C. Article 578 in that it places the policyholder upon absolutely the same footing with the owner of whatever number of shares of stock are inserted in the blank; and that the policyholder's status is not simply that of a common stockholder, but that of a preferred stockholder, owning the number of shares therein set forth; and thus the policyholder has all the benefits of a common or preferred stockholder, without any of the burdens of such a stockholder, and without even the nominal ownership of a single stock share in the company.

"(2) The clause may be peculiarly misleading to the prospective policyholder, and peculiarly susceptible to misrepresentation to him, as to the amount of dividends to be realized under such clause. Assume, for instance, that in order to sell a $1,000 life policy the agent offers the prospect a participating rider in this form filled in in such way as to entitle him to dividends equal to those on five or ten shares of common or preferred stock. This sounds like a bonanza. The agent emphasizes that this entitles the policyholder to dividends equal to those on five or ten shares as if he owned them, without even having to buy or pay for or assume the ownership, risk, burdens, and bother of the shares. The agent then paints a rosy picture as to past earnings of the company, and prospective future earnings, and makes it sound like the dividends alone will more than pay for the policy; whereas, in truth, if the shares of stock be non-par value or even par value, with small value per share, such as $10, or even in any conceivable situation, the actual dividends may be smaller than represented and smaller than those ordinarily paid on other participating policies, and thus the policyholder is deceived and misled to his serious injury."

Honorable O. P. Lockhart, page 3

Your letter of February 15, 1943, is in part as follows:

"In order that the factual circumstances upon which we desire the requested opinion to be predicated may appear with greater exactitude, allow us to amend and supplement our original request of January 15, 1943, in the following respects:

"The particular participation clause quoted in the second paragraph of our original letter is not now pending original approval and filing by our Department under Article 4749, but has already been filed, with our implied approval, and is being used currently in connection with approved forms of policies. In addition to the quoted clause, we have already on file other forms of participating clauses, substantially identical with the quoted form, but perhaps with slightly different wording, used by other companies.

"In addition to asking your opinion as to whether the quoted form and all other forms with substantially identical provisions violate any of the terms of Articles 4729, 4753, 5056, and especially 5053, we desire your opinion also, in event you hold that the quoted form violates any of the provisions of any of such cited articles, as to whether we have the power and duty in the stated circumstances to withdraw our approval of such offending forms and require discontinuance of their use in the future, having already impliedly approved them under Article 4749 by filing them. To the extent that the first paragraph of our original letter may have conveyed the impression that the forms in question are submitted originally and are now pending approval for the first time, the original inquiry is hereby amended.

"In the case of the company using the precise form quoted in the second paragraph of our original letter, it is represented to us the stockholders have by appropriate written record consented that dividends to policyholders in accordance with such quoted provision should be paid

before or at the same time dividends shall be paid on the stock of the company. We desire your opinion also as to whether this circumstance has any proper bearing upon the legality or illegality of the form as complying with the four articles above cited. The reason we desire your opinion upon this additional point is that in the case of other companies using substantially the same form or participating clause, there may or may not have been action, taken of record by the stockholders of the company involved, consenting to the payment of dividends to policyholders in accordance with the particular participating clause involved; and we, therefore, desire to know whether such consent, or the lack of such consent, on the part of the stockholders would have any proper bearing upon the compliance or noncompliance of the participating clause with the cited articles. In other words the opinion is not desired simply for the limited purpose of taking proper action, if any, with respect to the particular quoted clause, but also for our guidance in passing upon substantially identical forms, whether already filed or to be tendered for filing in future. It seems to us that injury or absence of injury to and complaint on the part of stockholders is no proper criterion for determining conformity or non-conformity to the statutory provisions cited.

"  .  .  .  ."

The participating clause or certificate to be attached to life policies of a domestic stock life insurance company, incorporated under Chapter 3, Title 78, Vernon's Annotated Civil Statutes, is as follows:

"Attached to and forming a part of Policy No. _____ issued on the life of _____ the insured.

"This policy shall participate in the surplus earnings of the Company as apportioned by the Board of Directors, beginning not later than the end of the second policy year and annually thereafter while this policy is in full force. Such

dividends shall accrue from Mortality Savings, Reserves released on lapsed policies, excess interest earnings and other profits on the Company's participating insurance as permitted by the Laws of the State of Texas.

"ANY SUCH ANNUAL DIVIDEND APPORTIONED TO THIS POLICY IN ANY CALENDAR YEAR, SHALL BE NOT LESS THAN THE CASH DIVIDEND DECLARED BY THE BOARD OF DIRECTORS AND PAID TO THE STOCKHOLDERS OF THE SOUTHERN STATES LIFE INSURANCE COMPANY IN SUCH YEAR ON ____ SHARES OF THE COMMON STOCK OF THE SOUTHERN STATES LIFE INSURANCE COMPANY.

"Executed this the ____ day of _____ 194___ at the office of the Southern States Life Insurance Company, Houston, Texas."

We quote from Cooley's Briefs on Insurance, Volume I, Second Edition, page 164, as follows:

"A common form of life policy is that known as a 'participating policy,' by virtue of the provisions of which the insured is entitled to share in the surplus earnings of the company in proportion to the premiums paid or the amount of his policy. This share in the surplus may be payable to him, at the option of the company, at a certain fixed period or as dividends. In the absence of a statutory provision, the time of distribution of a surplus to policy holders depends on the discretion of the directors of the company, except so far as it may be determined by the charter of the company or valid by-laws (Rothchild v. New York Life Ins. Co., 97 Ill. App. 547). Under a policy entitling the insured to participate in the distributio n of the surpluses according to such principles as might be adopted by the company, the insured has no title to any such surplus until a distribution is made by the officers of the company, and under such provision the company is not required to distribute the entire surplus (Greef v. Equitable Life Assur. Soc., 160 N.Y. 19, 54 N.E. 712, 46 L.R.A. 288, 73 Am. St. Rep. 659, reversing 57 N.Y. Supp. 871, 40 App. Div. 180). If the right of a policy holder to

share in surplus fund is contingent on his continuing a policyholder until the expiration of the certain period, he has no right to sue for a share of such fund until the expiration of the period limited. (Fry v. Provident Savings Life Assur. Soc. (Tenn. Ch. App.) 38 S. W. 116). If the statute provides several methods by which surplus may be distributed, the right of electing which method shall be adopted belongs to the company, and not to the insured (Eastman v. New York Life Ins. Co., 62 N. H. 1).

". . . .

"The rule that participating policies do not create a trust relation, so that a suit for an accounting will be justified, was announced in the comparatively early case of Taylor v. Charter Oak Life Ins. Co., 9 Daly (N.Y.) 489. In later cases arising in New York prior to the repeal of Laws 1892, c. 690, it was held that the right of a policyholder to share in the profits or surplus was not such a right as entitled him to an accounting. . . .

". . . .

"Dividends accruing on a policy of insurance must, of course, be paid according to the contracts under which they accrue (Citizens' Nat. Life Ins. Co. v. Morris, 104 Ark. 288, 148 S.W. 1019). A provision that the policyholder shall be entitled to dividends does not contemplate that the insured may dictate the amount of dividend that shall be declared, or question the result after the discretion of the managers has been exercised in this behalf. The contract is that the insured shall have the benefit of such dividends as the company shall appropriate, and not such as the policyholder or the court may think might have been appropriated. (Fuller v. Knapp (C.C.) 24 F. 100). . . .

It is stated in Couch's Cyclopedia of Insurance Law, Volume 8, page 6473:

"In determining the surplus to be credited
as dividends to life insurance policies, policies
may be divided into classes consisting of those
having a common year of issuance, age of appli-
cant, kind of policy, and amount of premiums paid.
But, although ordinarily life policies are classed
according to the year of issue, or according to
the ages of the persons insured, or according to
the plan of insurance, for purposes of distribu-
tion of surplus and profits among classes, the
plan of insurance selected, rather than the date
of issue and age of the insured, determines the
proper classification; otherwise, the law of aver-
ages, so essential to life insurance, is lost or
seriously curtailed. And classification for pur-
poses of distribution of surplus or profits must
be limited to policyholders who have contributed
thereto, and necessarily includes all who have so
contributed. Furthermore, under a contract of life
insurance which provides that the policyholder
shall be entitled to share in the distribution of
the company's surplus according to the methods and
principles adopted by the company for the distri-
bution of surplus, and under which only such pro-
portion of the surplus as equitably belongs to
the policy is to be credited to it and paid to the
policyholder, the proportion designated must be
ascertained and determined before the policyholder
can maintain an action at law to recover any por-
tion of the surplus. And, in case a participating
policy provides for an 'equitable share of the
divisible surplus,' it will not be considered
that the entire profits were intended to be divid-
ed among the policyholders, but such a share only
as the managers of the company may, in the exer-
cise of their discretion and good faith, declare
as profits, they having in view a reasonable and
necessary provision for the safety of the company."

We construe said participating clause or certificate
not as a guarantee by the company that it will ever declare
a dividend to its stockholders, but if it should do so, then
its participating policyholders will receive on their poli-
cies an amount not less than the cash dividend declared on
the number of shares stated in the certificate. The stock-
holders do not guarantee any stock dividends ever to be
paid the policyholders and no stock ever passes to the
policyholders. It is noted that the participating clause

or certificate does not state the number of shares of the common stock of the company which will be used as a basis in determining the amount of dividends to be paid. As we understand your request, it is your position that the company could discriminate as to policyholders by inserting a different number of shares of the common stock of the company in the blank contained in the participating clause or certificate. To illustrate: The company might sell two policies of a thousand dollars each and insert in one certificate five shares of stock and in the other ten shares of stock. If the company followed this policy and inserted different shares of ther common stock to be used as a basis in determining the amount of dividends to be paid in identical policies, then such an action would be in violation of Article 5053, Vernon's Annotated Civil Statutes, and Article 578, Vernon's Annotated Penal Code. However, for the purposes of this opinion, we must assume that the company will legally conduct its business and that each policyholder of the same class will be treated like every other policyholder in his class, and that the company will not resort to any discrimination whatsoever. The possibility that the company could discriminate between its policyholders does not justify us in concluding that the company will do so.

Articles 4753 and 5036, Vernon's Annotated Civil Statutes, provide for the calculation of surplus for dividend purposes and forbid the payment of dividends out of funds other than surplus profits as defined in said articles. The participating clause or certificate, above quoted, must, of course, be construed as permitting the payment of dividends only out of such lawful surpluses. Article 4729, Vernon's Annotated Civil Statutes, also forbids the payment of dividends other than from surplus profits and forbids guaranteed dividends to policyholders in excess of the amount of the expense of loading in the premium and provides further that in case of payment of dividends in excess of the amount of the expense loading reserves shall be set up to cover the deficiency in net premium thereby created.

In view of the foregoing, it is our opinion that the participating clause or certificate, quoted above, does not violate any provision of the Insurance Laws of this State. Therefore, having answered your first question as heretofore stated, it is not necessary to discuss the powers of the Board of Insurance Commissioners with reference to

Honorable O. P. Lockhart, page 9

the withdrawal of your approval of such forms and other matters relating thereto as mentioned in your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams
Assistant

AW:db

