**AMERICAN BOX SHOOK EXPORT ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

Docket No. 777.   Promulgated February 12, 1945.

*W. R. Wallace, Jr., Esq.*, and *Frank L. Muncy, C. P. A.*, for the petitioner.

*Arthur L. Murray*, Esq., for the respondent.

OPINION.

VAN FOSSAN, *Judge*: The fundamental issue before us is whether the petitioner had any taxable income of its own or whether its income was actually, at all times, the income of its members. In the event our determination of this issue is adverse to the petitioner, a further issue arises, namely, whether the petitioner is entitled to a deduction in the amount of the distributions made to its members on May 28, 1941.

There may be some question whether the first stated issue was properly raised in the pleadings. Although the respondent directed attention to the alleged defect at the hearing, no motion to amend the petition was made and the respondent consequently contends that the issue is not properly before the Court. However, we do not choose to rest our decision on the possible defect in the pleadings for, assuming that the issue was properly raised, the petitioner can not be sustained.

The petitioner relies on no specific statutory provision for exemption, but asks us to find that it was merely an agent for its members— a mere conduit through which the income flowed—and that all its earnings were in reality the property of its members and not its own taxable income. This we can not do.

The petitioner was organized under the general corporation laws of

California, not under the statutes providing for cooperative associations. No explanation was given for this action. The statutes under which an association is organized are not controlling, however, if it is actually organized and operates as a true cooperative. *Eugene Fruit Growers Association*, 37 B. T. A. 993; *United Cooperatives, Inc.*, 4 T. C. 93. In order to be a true cooperative, there must be a legal obligation on the part of the association to return to the producers, on a patronage basis, all funds received in excess of the cost of the goods sold. Such an obligation may arise from the association's articles of incorporation, its bylaws, or some other contract. *Midland Cooperative Wholesale*, 44 B. T. A. 824.

Here we find no evidence of such a legal obligation. There was no provision in either its articles or bylaws requiring the petitioner to distribute all its profits to its members on a patronage basis. Neither were there any express written contracts with the members to that effect. The most we find was an "understanding" between the petitioner and its members that all sums received in excess of the cost of selling the shook and in excess of the amounts placed in the reserve for anticipated claims should be returned to the members.

It does not appear, however, that this understanding was carried out in practice. During the year in controversy the petitioner made distributions to its members of $7,559.11 and had in its reserve the sum of $4,000. Yet it reported a taxable income, after deducting both of these items, of $13,317.66. What disposition was to be made of this amount, we do not know. There is nothing in the record to show that it could not be used for the payment of dividends on the stock, or for any other purpose. Other than the amounts actually distributed to the members, of which we shall speak later, there is nothing to show that the petitioner's earnings were not its own, which it could use for any ordinary corporate purpose.

In support of its contention, the petitioner relies principally upon *San Joaquin Valley Poultry Producers' Association* v. *Commissioner*, 136 Fed. (2d) 382. However, the facts in that case were materially different from those before us. There the petitioner was organized under the Agricultural Code of California, which provided that "Associations organized [under chapter 4 thereof] shall be deemed 'nonprofit', inasmuch as they are not organized to make profit for themselves, as such, or for their members, as such, but only for their members as producers." The petitioner's articles of incorporation provided that it "shall conduct and carry on its business without profit to itself." Its bylaws provided that it "is organized as a nonprofit cooperative association" and that "The 'net proceeds' resulting from the operation of the business, if any, shall belong to the members."

The petitioner in that case engaged in the business of marketing eggs for its members and selling supplies to its members and others. It did not pay its members the entire net proceeds of the eggs that it marketed for them, but retained certain amounts which it placed in three reserves, crediting to the members the proportionate share of each in the sums so retained. It was the amounts so retained which the respondent sought to tax. The court held that the sums in question were not the property of the petitioner, but were that of its members; that to hold otherwise would be to hold that the petitioner could and did make a profit for itself in contravention of its bylaws, its articles of incorporation, and the statute to which it owes its existence. It was pointed out that the petitioner never pretended to be the owner of the sums, but, as required by its bylaws, it prorated and credited them to its members. The court concluded that, since none of the sums ever belonged to the petitioner, they could not be, and were not, its income.

Here, however, as we have noted, neither the statute under which it was incorporated, its articles of incorporation, its bylaws nor any other contract forbade the petitioner from having income of its own. Under such circumstances, it can not be said that the petitioner's income was actually that of its members.

We turn, therefore, to a consideration of whether or not the petitioner is entitled to deduct from its gross income those amounts which it actually distributed to its members during the year in question. Deductions are available to taxpayers only by virtue of statutory provisions. Not every payment out of income creates a legal deduction. Here again the answer turns upon whether or not the right of the members to these amounts arises by reason of the corporate charter or bylaws or some other contract, and is not dependent upon some subsequent corporate action taken by the officers or directors. *United Cooperatives, Inc., supra; Midland Cooperative Wholesale, supra.* The petitioner contends that such a right inhered in its members and that it is entitled to the deduction. The respondent asserts that the petitioner was under no legal obligation to make the payments and that the distributions were in the nature of dividends, hence not available as statutory deductions.

As we have indicated above, there was nothing in the petitioner's articles of incorporation or bylaws imposing upon it the obligation to distribute its excess revenue among its members. The question is, therefore, narrowed to whether or not such an obligation existed because of some other contract or contracts between the petitioner and its members.

The petitioner contends that such a contract existed by virtue of the "understanding" between the petitioner and its members that they

were to receive all the profits in excess of cost and the additions to the reserve. This contention is not borne out by the evidence. The testimony shows that it had originally been contemplated that excess revenue should be distributed by way of dividends on the stock. At a meeting of the stockholders, held May 6, 1940, a motion was made that the bylaws be amended to effect the distribution of excess revenue among the members upon the basis of the dollar value of shipments made by each member. This amendment was never put into effect. It was finally decided that the basis for distribution proposed in the motion was not practicable and that "the only fair method of distribution" was upon the basis of board feet of shook shipped by each member. However, no formal action in this regard was ever taken.

It is apparent from the record also that no amounts were distributable to the members without prior action on the part of the petitioner's board of directors. This is shown by the following excerpt from the minutes of the meeting of the association held July 29, 1940:

Attention was further called to the fact that the Association had been set up as a non-profit organization with the understanding that any excess received from the sale of shook over expenses would, *upon action of the organization*, be subject to distribution as additional realization on shipments made during the period when such surplus was accumulated. [Italics added.]

This was likewise the understanding of the petitioner's members. One of the witnesses, who was general manager of a member association and a director of the petitioner, testified as follows:

* * * We invoiced the American Box Shook Export Association at the minimum price, and that is all we did until later, if I would attend a meeting of the Export Association and as a director of the Association learn that it was contemplated paying another dollar per thousand to certain shipments, then I would go back to our office and set up a debit against the Association.

The taxpayer points to no statute authorizing the claimed deductions. Clearly they are not deductible expenses. The petitioner was under no obligation to make distributions to its members until the board of directors had so acted. Whether the payments were in the nature of dividends, we need not decide. But see *Fontana Power Co.*, 43 B. T. A. 1090; affd., 127 Fed. (2d) 193; *Juneau Dairies, Inc.*, 44 B. T. A. 759. We are of the opinion that the petitioner is not entitled to the deduction in any event and that the respondent's determination must be sustained.

*Decision will be entered under Rule 50.*