## AMERICAN BOX SHOOK EXPORT ASS'N v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11115.

Circuit Court of Appeals, Ninth Circuit.

June 27, 1946.

W. R. Wallace, Jr., and W. R. Ray, both of San Francisco, Cal. (Williamson & Wallace, of San Francisco, Cal., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Robert N. Anderson, Louise Foster, and Loring W. Post, Sp. Assts. to Atty. Gen., all of Washington, D. C., for respondent.

Before GARRECHT, DENMAN, and BONE, Circuit Judges.

BONE, Circuit Judge.

Here for review is a decision of the Tax Court, reported in 4 T.C. 758, which sustained a determination by respondent Commissioner that there were deficiencies in petitioner's income and excess profits taxes for the fiscal year which ended May 31, 1941.

Petitioner is an association, formed under the general corporation laws of California, to export box shook for its stockholders who are companies engaged in the manufacture or distribution of lumber products. Petitioner asserts that it bought its shook from its stockholders under an agreement with them for what, in effect, is a double consideration. (a) When petitioner receives a foreign inquiry for box shook it asks one or more of its group of sellers for its minimum price. If this price is acceptable, it is paid to the seller and the title passes to petitioner. (b) When petitioner resells to the foreign buyer, it is obligated to pay to its seller a further consideration computed as follows: From the profits of all the sales of shook in the corporate fiscal year it deducts its expenses and gives to each seller a share based upon the ratio of the footage of shook resold for each seller to the total footage of shook resold.

In petitioner's fiscal year ending May 31, 1941, it made distributions to its stockholders out of earnings of that year totalling $7,559.11. In its income tax return petitioner reported total income of $50,865.03 and net taxable income of $13,317.66. It did not include in its gross income either the amounts distributed to the members during that year or the sum of $4,000 entered in its books as a reserve for anticipated claims. The commissioner held that the sums of $7,559.11 and $4,000 should have been included in its income for that year and assessed a deficiency for these amounts. (At the hearing it conceded the non-deductibility of the $4,000 sum if it is determined that it is taxable.)

Before the Tax Court, petitioner originally claimed that the payments to its stock-

holders should not be taxed because they were in the nature of rebates or patronage dividends within the rule of Midland Cooperative Wholesale v. Com'r, 44 B.T.A. 824. Later petitioner argued that it was a marketing cooperative and all the income it received was income of its stockholder-members and not its own income.

The Tax Court considered both contentions and held (1) that the income received by petitioner was not the income of its stockholders, and (2) that sums which it distributed to the stockholders during the taxable year could not be deducted or excluded from gross income.

We conclude that the primary question before this court upon this appeal is whether there is evidence in the record to support the Tax Court's conclusion that all of petitioner's income is its own within the meaning of Section 22(a) of the I.R.C., 26 U.S.C.A. Int.Rev.Code, § 22(a). Viewed in this light, we are of the opinion that the rule announced in Kelley Co. et al. v. Commissioner, 66 S.Ct. 299; Commissioner v. Scottish American Co., 323 U.S. 119, 65 S. Ct. 169, 89 L.Ed. 113; Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, is binding upon us and calls for affirmance.

The Tax Court cites its earlier decisions in which the court had excluded from the gross income of cooperative marketing associations patronage dividends or rebates payable to their patrons. See Midland Cooperative Wholesale v. Com'r, supra; United Cooperatives, Inc., v. Com'r, 4 T.C. 93; and also, Fruit Growers Supply Co., 21 B.T.A. 315, 326, affirmed 9 Cir., 56 F.2d 90, 93. In order to be a true cooperative, however, the decisions emphasize that there must be a legal obligation on the part of the association, made before the receipt of income, to return to the members on a patronage basis, all funds received in excess of the cost of the goods sold. Such an obligation may arise from the association's articles of incorporation, its by-laws, or some other contract.

The Tax Court held in this case that there was no legally binding obligation upon the association to return to its stockholders in the form of patronage dividends,

its income, over expenses and a reserve for future claims. The Tax Court found that neither petitioner's articles of incorporation, nor its by-laws required such repayment. The Tax Court also concluded that the informal "understanding" between petitioner and its stockholders was not a legally binding obligation requiring petitioner to repay to its stockholders all income after deducting expenses and a reserve for future claims. Petitioner maintains upon this appeal that the evidence will not support any conclusion except that the "understanding" was a binding contract. Therefore, petitioner argues that all income received by the association was in reality income of the stockholders.

We cannot agree with petitioner. On the subject of the "understanding" the Tax Court held that although petitioner's witnesses spoke of an understanding between the association and its stockholders, the understanding was not carried out in practice. This conclusion could well be inferred by the Tax Court from the evidence. During the taxable year, petitioner distributed $7,559.11 to its stockholders and placed $4,000 in its reserve. Yet it reported a taxable income, after deducting both of these items, of $13,317.66. There is no specific evidence to show what was to be done with this amount. The evidence does not show that it was set up as a reserve fund which was pro-rated among the stockholders at any time. Under petitioner's corporate set up, the sum could be used for the payment of dividends, or other corporate purposes.

There is also other evidence upon which the Tax Court could base its conclusion. Originally it was contemplated that excess profits of the association should be distributed by way of dividends on the stock. Later an amendment to the by-laws was suggested to the effect that excess profits should be distributed upon the basis of the dollar value of shipments made by each stockholder. The amendment was never adopted. Nor was any formal corporate action taken on the way profits were distributed during the year in question, that is, on the basis of board feet of shook shipped by each stockholder. The Tax Court also found that "the petitioner was under no obligation to make distributions to its mem-

bers [i. e. stockholders] until the board of directors had so acted," and it quoted testimony from the record upon this point.[1] Petitioner draws contrary conclusions from this testimony. We cannot say, however, that the Tax Court's conclusion is not reasonably deducible from the evidence.

Petitioner asserts that the problem of ownership of the profits in this case is a matter of California law, and cites Mountain View Walnut Growers Ass'n v. California Walnut Growers Ass'n, 19 Cal.App. 2d 227, 65 P.2d 80, as controlling. Even if we assume, however, that local law is controlling, that case is not helpful. There the funds were controlled, at least impliedly, by a written contract, and the question before the court was an entirely different one than here presented.

The case of San Joaquin V. Poultry Producer's Ass'n v. Commissioner, 9 Cir., 136 F.2d 382, relied upon by petitioner is clearly distinguishable from the present case. In that case, the California Agricultural Code, under which the association was incorporated, provided that the association should engage in business without profits for itself, but for its members only. The association's articles of incorporation and its by-laws had similar provisions. The by-laws also provided that profits not paid out by the association for expenses or returned to the members were to be placed in specific reserves and "prorated" and credited among the members. As stated above, petitioner was incorporated under the general corporation statutes of California, and neither its articles nor by-laws required "patronage dividends."

Petitioner's final point is that the Tax Court's conclusions are not founded upon its "findings of facts," and maintains that this court may look for the Tax Court's findings only in that part of the decision designated "findings of facts" and not in that part designated "opinion".

■ This court has previously held that we may read the findings of the Tax Court together with its opinion to ascertain what the Tax Court found as facts. California Iron Yards Co. v. Commissioner, 9 Cir., 47 F.2d 514; Winnett v. Helvering, 9 Cir., 68 F.2d 615; Keck Inv. Co., v. Commissioner, 9 Cir., 77 F.2d 244, 245; California Barrel Co. v. Commissioner, 9 Cir., 81 F.2d 190. We do not regard the decisions as having been overruled *sub silentio* in Kelleher **v.** Commissioner, 9 Cir., 94 F.2d 294.

■ We are of the opinion that there is sufficient evidence to support the Tax Court's conclusion that the "understanding" is not a legally binding contract. Our determination of the effect of the "understanding" necessitates holding against the petitioner upon the two issues before the Tax Court.[2]

The decision of the Tax Court is affirmed.

---

[1] "This is shown by the following excerpt from the minutes of the meeting of the Association held July 29, 1940:

" 'Attention was further called to the fact that the Association had been set up as a non-profit organization with the understanding that any excess received from the sale of shook over expenses would, *upon action of the organization*, be subject to distribution as additional realization on shipments made during the period when such surplus was accumulated. [Emphasis supplied.]'

"This was likewise the understanding of the petitioner's members. One of the witnesses, who was general manager of a member association and a director of the petitioner, testified as follows:

" 'We invoiced the American Box Shook Export Association at the minimum price, and that is all we did until later, if I would attend a meeting of the Export Association and as a director of the Association learn that it was contemplated paying another dollar per thousand to certain shipments, then I would go back to our office and set up a debit against the Association.' "

[2] In its opinion the Tax Court observes that petitioner did not rely upon or claim the right to a deduction under any statute. It relied solely on the above mentioned "understanding", claiming to be a mere "conduit" through which the income flowed to its stockholders. Since we uphold the Tax Court's conclusion that the "understanding" is not binding, petitioner can claim no deduction or exemption. Compare Cleveland Shopping News Co. v. Routzahn, 6 Cir., 89 F.2d 902; 26 U.S.C.A. Int.Rev.Code, § 101 (12); and Sunset Scavenger Co., Inc., v. Commissioner, 9 Cir., 84 F.2d 453.