**PENINSULA LIGHT COMPANY, INC., a Mutual Corporation, Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

No. 75–2594.

United States Court of Appeals, Ninth Circuit.

April 21, 1977.

Leonard J. Henzke, argued, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Ray Graves, argued, Murray, Scott, McGavick, Gagliardi & Graves, Tacoma, Wash., for plaintiff-appellee.

Before WATERMAN,* KENNEDY and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

In this case the United States Government (IRS) appeals from a district court ruling which held that Peninsula Light Company, Inc. (Peninsula) was a tax-exempt corporation under 26 U.S.C. § 501(c)(12)[1] and entitled to a refund of Federal income taxes paid. We affirm.

## I.

## THE BACKGROUND

Peninsula is a nonprofit, non-stock corporation lawfully organized under the laws of the State of Washington for the purpose of supplying electric power at cost to its members. Any party which qualifies under the corporation's bylaws can become a member for $100.00. Peninsula currently has approximately 6,500 members, all of whom are equal. No member can acquire any interest which will entitle him to any greater voice or vote in the corporation than any other member. The articles of incorporation provide that the corporate existence is perpetual. However, should some unforeseeable event occur (i. e., eminent domain) which would force dissolution of the corporation, the articles provide that the net assets would be distributed equally to the members of the corporation.

The electric power supplied by Peninsula is sold to the members slightly over cost to insure operating and maintenance capital and provide for a reserve fund "for contingencies." This "surplus" over the cost of the power sold has never been distributed back to the members. Rather, it has been plowed back into the operation and improvement of Peninsula or kept in the reserve fund.

Peninsula was incorporated as a mutual company in 1925. In 1934 the IRS granted Peninsula's application for tax-exempt status. By letter dated November 7, 1934, the IRS said:

". . . it is held that you are entitled to exemption under the provisions of section 103(10) of the Revenue Act of 1932 [the predecessor of 26 U.S.C. 501(c)(12)] and the corresponding sections of prior revenue acts. You are not, therefore, required to file returns for 1933 and prior years. Inasmuch as section 101(10) of the Revenue Act of 1934 is similar to section 103(10) of the Revenue Act of 1932, returns will not be required for 1934 and subsequent years so long as there is no change in your organization, your purposes or method of operation."

---

* The Honorable Sterry R. Waterman, Senior Circuit Judge for the Second Circuit, sitting by designation.

1. 26 U.S.C. § 501 provides, in pertinent part:
   (a) Exemption from taxation.—
   An organization described in subsection (c) . . . shall be exempt from taxation under this subtitle . . .
   (c) List of exempt organizations.—
   (12) Benevolent life insurance associations of a purely local character, mutual ditch or irri-gation companies, mutual or cooperative telephone companies, *or like organizations;* but only if 85 percent of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses. (Emphasis supplied)
   No one questions the fact that Peninsula is a "like organization" and that it satisfies the 85% requirement. The IRS here only questions whether Peninsula is a "mutual or cooperative".

To this date, Peninsula's organization, purposes and method of operation are the same as they were in 1934 (and prior thereto) when the IRS first granted it tax-exempt status. The IRS position on Peninsula's tax-exempt status remained the same for thirty-seven years until 1971. In 1971, the National Office of the IRS sent a technical advice memorandum to the Seattle District Office suggesting that unless Peninsula made certain changes in its organization and operation respecting distribution on a patronage basis, Peninsula would not qualify as a tax-exempt corporation under 26 U.S.C. § 501(c)(12).

This technical advice memorandum was prompted by an eminent domain action involving part of Peninsula's distribution system. In 1967 Mason County Public Utility District No. 3 acquired by eminent domain that part of Peninsula's electrical system which was located in Mason County. Just compensation was paid for the property taken and for severance damages. The former members of Peninsula were served by the new utility so Peninsula returned their $100.00 membership fee. These members acknowledged in writing that the receipt of the $100.00 constituted full payment for their interest in Peninsula.

In 1973 the District Director of the IRS sent a letter to Peninsula revoking their tax-exempt status. In this letter the Director said:

> "Revocation is based on your failure to operate as a mutual company within the meaning of section 501(c)(12) in that you did not maintain the required records[2] from which each member's interest in

company assets can be determined and did not distribute gains realized from a 1967 sale of assets on a patronage basis."

The letter stated that the revocation was effective for 1972. For that tax year Peninsula paid a total of $43,379.00 in federal income taxes and then filed a timely formal claim for a refund, which was disallowed by the IRS.

After the refund claim was disallowed, Peninsula instituted this action in the district court seeking the tax refund and a declaration that Peninsula was a tax-exempt corporation under 26 U.S.C. § 501(c)(12).

On March 13, 1975, after a trial without a jury, the court concluded that Peninsula was a tax-exempt corporation under the statute and entitled to judgment against the United States for $43,379.00, with interest.

The issue in this case is whether Peninsula, as an electrical power corporation, *must* credit or distribute its surplus or net gains on a patronage basis in order to maintain tax-exempt status as a mutual organization under 26 U.S.C. § 501(c)(12).

II.

## MUST THERE BE CREDIT OR DISTRIBUTION ON THE BASIS OF PATRONAGE?

■ The Government cites no case law or statutory authority which suggests a rule that mutual electric power corporations must credit or distribute surplus on the basis of patronage.[3] In our view, tax-ex-

---

**2.** The Government concedes on appeal that Peninsula does have the required records. Therefore, this no longer concerns us.

**3.** The Government cites *American Box Shook Exp. Ass'n. v. Commissioner*, 156 F.2d 629 (9th Cir. 1946), as authority for its contention that Peninsula must credit or distribute surplus on the patronage basis. It then quotes this language from the case:

> "In order to be a true cooperative, however, the decisions emphasize that there must be a legal obligation on the part of the association, made before the receipt of income, to return to the members on a patronage basis,

all funds received in excess of the costs of the goods sold." (156 F.2d at 630)

Taken alone, this quote suggests that an association must return funds on a patronage basis. *However*, the Government quotes this passage out of context. When this language is read in the context of the entire opinion, the case does not suggest that patronage payments must be made. In *Box Shook*, the petitioner was contending that certain payments he had made to others were patronage payments. The issue before the court was whether or not there must be a binding agreement to make the patronage payments before they can be considered as such for federal tax purposes. The issue was

empt status should be conferred upon mutual organizations which exist and operate without a profit motive. The Government correctly points out in its brief that "the basic principle of all cooperative or mutual organizations is the avoidance of entrepreneur profit." (Government's Opening Brief, p. 14).

Peninsula's articles of incorporation (III (h)) provide that the corporate purpose is to "render services to members of this corporation . . . without profit to the corporation." The record in this case clearly shows that Peninsula is not and never has operated with any type of profit motive and the Government acknowledged this at the trial. For example, this exchange took place between the trial court and counsel for the Government.

> "THE COURT: Well, does it look like they are trying to build up a lot of assets so they can liquidate and distribute equally a big profit to these $100.00 shareholders?
>
> "MR. FLAHERTY: Oh, no, I am sure that is not their intent."
>
> (TR 4)

The Government also concedes in their brief that "the sincerity and good faith of the instant taxpayer [Peninsula] is not questioned." (Government's Opening Brief, pp. 10–11).

It is also interesting to note that should Peninsula capitulate to the IRS and agree to the patronage basis distribution, there would be no tax consequences. Peninsula would pay no income taxes and would keep its tax-exempt status.

Since the IRS' interest in this case is not in ferreting out profit entrepreneurs from this tax-exemption statute or to add to the income tax coffers of the Government, one is led to wonder why the Government is so insistent that Peninsula make patronage payments.

The IRS hints at two collateral reasons for revoking Peninsula's tax-exempt status. The first reason is that the IRS does not feel that all of Peninsula's members are being treated fairly. The Government notes, for example, that when a Peninsula member moves out of the service area or becomes a member of another utility through eminent domain (as happened to a number of members in Mason County in 1967), he gets his membership fee back, but leaves behind the "surplus" he may have contributed. The IRS feels that this is unfair and contends that "patronage credits and distributions constitute the best way for a mutual or cooperative enterprise to treat all members fairly." (Government's Opening Brief, p. 10).

We, as an appellate court, are not here to decide what is the most "fair" for the members of Peninsula and we seriously question whether that is properly within the province of the IRS either.[4] We sit only to decide whether Peninsula is a tax-exempt mutual organization. Even assuming that Peninsula's system is unfair to some members, it is the members themselves, utilizing their equal voting power,

not whether petitioner must make patronage payments. The court's finding in effect says that before the payments can be counted as patronage payments, there must first exist a legally binding contract to make the payments. From our reading, *Box Shook* cannot be read to suggest a rule that patronage payments must be made to qualify an organization for federal tax-exempt status.

The Government also cites as authority *Midland Cooperative Wholesale v. Ickes*, 125 F.2d 618 (8th Cir. 1942). We find this case to be irrelevant to the instant case and inapplicable. The issue in *Midland* is not about tax-exemption status, but instead is whether a cooperative which paid dividends on a patronage basis

(as required by the state law and the organization's own bylaws) could become a distributor of coal under the Bituminous Coal Act.

*United Cooperatives, Inc. v. C.I.R.*, 4 T.C. 93 (1944), cited by the Government, is equally unhelpful to their position because the issue of the case does not concern the organization's tax-exempt status. Indeed, in *United Cooperatives*, petitioner did not even contend that it was a tax-exempt organization.

4. In a very real sense the "fairness" principle has already been determined by the Washington Legislature, the terms of the articles and bylaws and the members of this mutual company.

who should change it, if that is their wish and if they can muster the strength.

In *Order of Railway Employees*, 2 T.C. 607 (1943), *Commissioner's appeal dismissed*, 143 F.2d 597 (9th Cir. 1944), the Tax Court said:

"The members, and they alone, are entitled to all dividends, whether resulting from current operations or paid upon dissolution . . ." (2 T.C. at 615)

\* \* \* \* \* \*

". . . the fact that some policyholders may not receive their proportion does not prevent the company from being a mutual." (2 T.C. at 616)

And from *Mutual Fire, Marine & Inland Insurance Co. v. Commissioner*, 8 T.C. 1212, comes this language:

"While the bylaws of the petitioner make no provision with respect to the rights of former members to share in the assets on final dissolution, the petitioner's status as a mutual is not thereby affected." (8 T.C. at 1224)

The fact that these cases deal with insurance mutuals rather than electric service mutuals is of no controlling significance on the narrow point under consideration. We agree with the district judge when he said:

". . . it just doesn't make any sense at all to me that this mutual, pure mutual should be required to operate as the government directs them to operate.

"The democratic process should prevail, and let the customers decide, if it ever is dissolved, whether they want to divide it equally or divide it in any fashion that they should care to, and I think under the circumstances there isn't any evidence that anybody is going to get anything out of this any more than service." (RT 98)

### III.

### POSSIBLE FUTURE ABUSE BY OTHERS

■ The IRS next advances the argument that "failure to require patronage credits and distributions might well be abused if taken advantage of by other com-

panies." (Government's Opening Brief, p. 11). This argument merits no discussion. It goes without saying that it would be improper for us to decide a legal point against Peninsula based on some wrong which "might" be committed by some other organization.

### IV.

### CONCLUSION

■ We find that Peninsula is a corporation owned by the members and for the members. All of the members have an equal interest and equal voice. The corporation does not exist or operate with improper profit motives or results. For these reasons, as well as those discussed above, we hold under the specific facts of this case, that Peninsula Light Company, Inc. is a mutual organization entitled to tax-exempt status under 26 U.S.C. § 501(c)(12). We further hold that Peninsula need not credit or make distributions on a patronage basis in order to preserve its tax-exempt status.

Although it is not a ground for our holding herein, we strongly feel and therefore suggest that because of the long-standing policy of the IRS (some 37 years) upon which many mutuals and cooperatives in many fields of endeavor undoubtedly have relied, the ends sought to be accomplished here by the IRS, through rule or regulation, ought to come, if at all, from Congressional action and not by "agency legislation" through the offices of the Internal Revenue Service.

The judgment of the district court below is hereby AFFIRMED.