## NEW YORK LIFE INSURANCE COMPANY *v.* BOWERS, EXECUTOR.

## BOWERS, EXECUTOR, *v.* NEW YORK LIFE INSUR- ANCE COMPANY.

Nos. 93 and 160.   Argued March 2, 3, 1931.—Decided April 13, 1931.

243

*Mr. James H. McIntosh* for the New York Life Insurance Company.

*Mr. Claude R. Branch,* Special Assistant to the Attorney General, with whom *Solicitor General Thacher, Assistant Attorney General Youngquist,* and *Messrs. Sewall Key* and *John H. McEvers,* Special Assistants to the Attorney General, *Erwin N. Griswold, Clarence M. Charest,* General Counsel, and *Edward H. Horton,* Special Attorney, Bureau of Internal Revenue, and *Samuel C. Coleman,* Assistant United States Attorney, were on the brief, for Bowers, Executor.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The company sued the collector in the district court, southern district of New York, to recover capital stock taxes exacted under § 1000 (c) of the Revenue Act of 1918[1] for four years ending June 30, 1922. A jury was waived and the case was submitted on an agreed statement of facts. The court held the taxes for the first three years were rightly collected and as to the causes of action alleged on account of them dismissed the complaint. It held that,

---

[1] (c) " . . . The taxes imposed by this section shall apply to mutual insurance companies, and in the case of every such domestic company the tax shall be equivalent to $1 for each $1,000 of the excess over $5,000 of the sum of its surplus or contingent reserves maintained for the general use of the business and any reserves the net additions to which are included in net income under the provisions of Title II, as of the close of the preceding accounting period used by such company for purposes of making its income tax return . . ." 40 Stat. 1126.

by reason of the Revenue Act of 1921, 42 Stat. 227, 261, the capital stock tax did not apply to the last year, and gave plaintiff judgment for the amount paid for that period. 34 F. (2d) 60. On the company's appeal (No. 93 here) and the collector's cross-appeal (No. 160) the Circuit Court of Appeals affirmed the judgment. 39 F. (2d) 556.

The company is a New York corporation without capital stock engaged in mutual life insurance on the level premium plan. It made a return for each of the years showing no tax. After auditing the returns, the Commissioner of Internal Revenue assessed the taxes in question.

By means of an accepted mortality table and an assumed rate of interest, the company calculates the amount that would be required to be paid by the insured each year in advance to cover policy claims if deaths occur as indicated by the table and if that rate of interest is realized on the investments. The amount so ascertained is called the net or mathematical premium. There is added loading to cover expenses and unforeseen contingencies such as excess mortality, diminished interest, investment losses and higher taxes. The premium so built up is named in the policy and constitutes the maximum that the company may require the insured to pay.

The amount by which the premium exceeds the company's actual cost must be returned to the policyholder. *Penn Mutual Life Ins. Co.* v. *Lederer,* 252 U. S. 523, 525. Some of the company's policies are on the annual dividend plan, which requires it to account for divisible surplus and to make yearly distribution to the policyholders. The other policies are on the deferred dividend plan and provide for holding the overpayments to the credit of the deferred dividend policyholders as a class, accumulating them at interest and paying to each holder of a policy in force at the time designated therein his share of the accumulated sum.

As soon as practicable after the expiration of each calendar year, the company takes an account of its business, ascertains the surplus earned that year, and determines the amount which safely may be distributed out of the surplus for that and prior years. By the laws of New York and of other States where the company does business, it is required annually to file a statement showing, among other things, income and disbursements in, and its assets and liabilities at the end of, the preceding year. Item 35 on the form used shows dividends•apportioned and payable to annual dividend policyholders to and including December 31 following. Item 36 covers dividends apportioned and payable to deferred dividend policies in the same period. Item 37 shows the amounts set apart, apportioned, provisionally ascertained, calculated, declared or held awaiting apportionment upon deferred dividend policies not included in item 36.

Section 1000 (c) imposes a tax on each mutual insurance company's "surplus or contingent reserves maintained for the general use of the business." The Commissioner based the capital stock taxes for each year on the total of items 35, 36 and 37 as disclosed by the company's annual statements filed for the years ending respectively December 31; 1917, 1918, 1919 and 1920.

1. These items represent surplus within the meaning of subdivision (c).

The sums to be paid as dividends are not a part of the insurance specified in the policies. They are derived from amounts which, from abundant caution, are included in the advance premiums over and above what is found by actual experience to be necessary to pay the cost of the insurance and the expenses of carrying on the business. They indicate a "surplus," i. e., assets in excess of what is deemed necessary to provide for the payment when due of the amounts specifically covered by the policies.

No money or property is set aside on account of such dividends. The items in question do not constitute liabilities. They are merely accounting entries to show the amounts presently available for dividends currently payable and as well the fund accumulated in respect of deferred dividends. Such entries are analogous to those in balance sheets of business corporations which show capital stock as a liability. And until actually paid out as dividends the money or securities used for that purpose properly may be deemed to be maintained for " the general use of the business."

Under the company's construction of subdivision (c) it was not liable for the tax for any year while the 1918 Act was in force. According to its returns it had no " surplus or contingent reserves." The company does not suggest and there is no reason to suppose that, in respect of assets properly so to be classed, it is not typical of mutual insurance companies generally. When regard is had to the well-known and necessary practice of mutual insurance companies to collect in advance premiums in excess of total costs and to pay dividends out of the resulting surplus it is clear that the company's construction is unreasonable. It would operate to defeat the plainly expressed purpose of Congress to impose a capital stock tax on mutual insurance companies.

2. The company contends that in any event subdivision (b) of § 1000 requires that item 37 be excluded from the amount used to measure the excise.

That provision is: " In computing the tax in the case of insurance companies such deposits and reserve funds as they are required by law or contract to maintain or hold for the protection of or payment to or apportionment among policyholders shall not be included." The legislative history of § 1000 goes far to make its meaning clear. Section 407 of the 1916 Act imposed upon corporations a special excise measured by the value of their capital stock.

39 Stat. 789. Its scope was not clear. At first the Treasury Department ruled that as mutual insurance companies have no capital stock the section did not apply to them. Regulations 38, Art. 2 (b). That construction was later reversed. Regulations 38 (Revised) Art. 3. And see *Lumber Fire Ins. Co.* v. *Malley,* 44 F. (2d) 553.

In the bill for the Revenue Act of 1918 as it passed the House, § 1000 was substantially the same as § 407 of the 1916 Act. The Senate substituted provisions to tax the incomes of insurance companies. In conference, the original § 1000 was restored, and there was added to it the provision in paragraph (c) which specifically declares that the taxes imposed by that section shall apply to mutual insurance companies. The provision added was complete in itself. It specified the rate and indicated the basis on which the tax was to be calculated; it was adequate to govern the ascertainment of the amount and there is nothing to indicate an intention that the language there used should be modified by anything in subdivision (b). It is clear that (c) was intended exclusively to govern mutual insurance companies, and that (b) applies only to stock insurance companies.

3. The company insists that § 1000 of the 1918 Act did not impose a tax for the year ending June 30, 1921.

The Treasury Department ruled that the taxes imposed by § 407 of the 1916 Act were payable in advance for the year commencing July 1 and that construction was followed while the section remained in force. Undoubtedly Congress intended that the same rule should be followed under the substitute provision, § 1000 of the 1918 Act. And the Treasury Department so construed it. The 1918 Act was not approved until February 24, 1919. The year commencing July 1, 1918, was the first for which it imposed the capital stock tax. See *Hecht* v. *Malley,* 265 U. S. 144, 163. And this company's annual statement for 1917 was the basis on which the Commissioner made his

calculations. The legislative history and the administrative construction make it clear that such taxes were payable in advance.[2]

The taxes for the third year under the 1918 Act were calculated on the insurance company's annual statement for the calendar year 1919 and were payable in advance for the fiscal year commencing July 1, 1920. There is nothing in the 1921 Act, which was not approved until November 23, to suggest that Congress intended that capital stock taxes so payable in 1920 were to be returned if already paid or canceled if delinquent. The company was rightly held for that year's tax.

4. The collector maintains that despite the 1921 Act the company is liable under § 1000 of the 1918 Act for the capital stock tax for the year ending June 30, 1922.

Section 243 of the 1921 Act imposes a tax upon the net income of every insurance company for the calendar year 1921 and each taxable year thereafter. It declares that tax to be in lieu of other taxes imposed by that Act, namely income taxes on corporations generally, § 230, capital stock taxes, § 1000, and profits taxes, Title III. Section 1400 (a) repealed, to take effect January 1, 1922, Title X of the 1918 Act, which includes § 1000. Section 1400 (b) provides: " In the case of any tax imposed by any part of the Revenue Act of 1918 repealed by this Act, if there is a tax imposed by this Act in lieu thereof, the provision [of the 1918 Act] imposing such tax shall remain in force until the corresponding tax under this Act takes effect." The income tax imposed by § 243 is declared to be in lieu of capital stock tax in § 1000 of the same Act.

---

[2] Art. 3, Regulations 38, promulgated October 19, 1916, under Revenue Act of 1916. Form 707, 20 T. D. 470. Art. 1, Regulations 38 (Revised), promulgated August 9, 1918, under Revenue Act of 1916. Art. 1, Regulations 50, promulgated April 29, 1919, under Revenue Act of 1918. Art. 1, Regulations 50 (Revised), promulgated June 21, 1920, under Revenue Act of 1918. Art. 2, Regulations 64 (1922 ed.), promulgated June 15, 1922, under Revenue Act of 1921.

And, as the latter tax was in lieu of the capital stock tax imposed by § 1000 of the 1918 Act, it reasonably may be said that the income tax imposed by § 243 was intended to be in lieu of the capital stock tax of § 1000 of the 1918 Act.

This income tax was one " corresponding " to the capital stock tax under § 1000 of the 1918 Act within the meaning of § 1400 (b). And under that provision the last mentioned tax remained in force until the former took effect. The income tax imposed by § 243 was " for the calendar year 1921." Section 1400 (b) makes it plain that there was no intention to subject insurance companies to both taxes for the same period. The 1921 Act operated to cancel or remit the capital stock tax for that year. The company is entitled to recover the amount collected for that period.

*In No. 93 judgment affirmed.*
*In No. 160 judgment affirmed.*