Major W. M. F. BAYLISS, Executor of the Estate of Kate Burwell Williams

v.

UNITED STATES of America.

Civ. A. No. 3502.

United States District Court
E. D. Virginia,
Richmond Division.

April 12, 1963.

Fielding L. Williams, Frank W. Hardy, Williams, Mullen & Christian, Richmond, Va., for plaintiff.

John D. Clarke, Jr., Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, George A. Hrdlicks, Attys., Dept. of Justice, Washington, D. C., C. V. Spratley, Jr., U. S. Atty., Samuel W. Phillips, Asst. U. S. Atty., Richmond, Va., for defendant.

BUTZNER, District Judge.

The taxpayer, Executor of the Estate of Kate B. Williams, deceased, brought this action to recover estate taxes, resulting from a deficiency assessed by the District Director of Internal Revenue. The taxpayer paid the deficiency and now seeks a refund.

The question presented is whether property transferred in trust by the decedent on February 25, 1932, should be included as a part of her gross estate.

The question raises two issues, which have been clearly stated in the plaintiff's brief:

"(1) Was the property transferred within the meaning of Section 2036(b) on February 25, 1932, the date the trust was created, or in 1938, the date of the death of E. Victor Williams, at which time the trust became irrevocable."

The plaintiff contends the transfer was made in 1932. The Government contends the transfer was made in 1938.

The second issue is:

"Assuming the transfer was made on February 25, 1932, did Kate B. Williams reserve for her life or for any period which did not end before her death—

"(i) the use, possession, right to the income, or other enjoyment of the transferred property, or

"(ii) the right alone to designate the person or persons who possess or enjoy the transferred property or its income."

Briefly, the second issue presents the question of whether the trust fell within the provision of the joint resolution of March 3, 1931. The plaintiff contends that it did not. The Government contends that it did.

█ The Court is of the opinion that the corpus of the trust must be included in the decedent's gross estate because the trust fell within the provisions of the joint resolution of March 3, 1931.

The facts have been stipulated. On February 25, 1932, Kate B. Williams, by memorandum of agreement, created a trust, naming E. Victor Williams, her husband, American Bank and Trust Company, and Catherine Murat Williams trustees. The corpus of the trust consisted of various corporate securities. The pertinent provisions of the trust are:

"2. Until the termination of the trust, the net income shall be distributed as follows by the Trustee:

"A. Periodically, but not less frequently than once in each quarter-year, during the life of the Settler, Kate B. Williams, * * *, the net income from the Trust shall be paid to her.

"B. Periodically thereafter, but not less frequently than once in each quarter-year, the net income from the trust shall be paid to E. Victor Williams, during his lifetime, * *. (Further provisions concerning payment of income to named beneficiaries upon E. Victor Williams' remarriage or death are not pertinent to this decision.)

"C. A quarter-year shall be the three calendar months ending on the last days of March, June, September and December.

"3. This Trust shall terminate twenty-one (21) years after the death of the last to survive of the Settlor, Kate B. Williams; E. Victor Williams; and Catherine Murat Williams.

\* \* \* \* \* \*

"7.B. No beneficiary shall have any title or right or vested interest in or to any of the corpus or income of the Trust until the day upon which the Trustee shall, according to the terms of this instrument, pay such corpus or income to such beneficiary, and then only if such beneficiary be living on that day.

"C. The income-payments provided for hereunder shall be made only when and as such income, after it shall have accrued, shall be in the possession of the Trustee for payment; and no disposition, charge, or encumbrance of such income, or of the principal of the Trust Fund, or any part thereof, by any beneficiary hereunder, by way of anticipation, shall be of any validity or legal effect; and no such income or principal or any part thereof, shall in any wise be liable to any claim of any creditor of any such beneficiary.

"D. The Trustee may determine the mode in which expenses are to be borne as between Capital and Income, and may determine what moneys or things are to be treated as Capital or Income, which power shall include the power to determine the manner in which any part of the actual income of any investment purchased at a premium or a discount shall be treated as Capital or Income. Each such determination, whether made upon a question actually raised or implied in the acts or accounts of the Trustees, shall be conclusive and binding upon all persons. Stock dividends (including rights to subscribe accruing to the Trust as a shareholder) shall be Capital and not Income.

\* \* \* \* \* \*

"11. This Trust may be revoked at any time during the lifetime of E. Victor Williams, by written direction to that effect, signed by the Set-

tlor, and E. Victor Williams, and delivered to Trustee, and upon revocation of the Trust, the entire trust fund, with all income accrued at the time of revocation shall be paid and delivered as shall be directed in the paper affecting the revocation.

"12.A.  This trust may be amended, changed or varied at any time in any way and from time to time, during the lifetime of E. Victor Williams by a written agreement signed on the one part by the Settlor and E. Victor Williams and on the other part by the Trustees or Trustee then serving.

"B.  The right is further expressly reserved by the Settlor that she may by her last will and testament dispose of not to exceed in the aggregate the sum of Five Thousand Dollars ($5,000.00) to Ten Thousand Dollars ($10,000.00), which said sum shall constitute a charge upon and be paid out of the corpus of this trust.

"C.  It is further expressly understood, covenanted and agreed that this trust, as it shall exist at the time of death of the said E. Victor Williams, shall thereupon become and be thereafter an irrevocable trust, not subject to any amendment, change, alteration, modification or revocation whatsoever by any party hereto or beneficiary hereunder, except only the right of the Settlor to dispose of by her last will and testament either before or after the death of the said E. Victor Williams of the said sum of Five Thousand Dollars ($5,000.00) to Ten Thousand Dollars ($10,000.00) from the corpus of this trust as set forth in this section 12 and paragraph B hereof."

On January 12, 1934 and on June 30, 1937, the trust was amended in a manner not decisive of the issues before the Court.

E. Victor Williams died in 1938. Thereafter a gift tax was assessed and paid on the value of the trust assets at the time of his death, less and except the life interest retained by the decedent and the sum of $10,000.00 over which she reserved a power of disposition by will.

The value of the trust assets on February 25, 1932, is not stipulated. The value of the assets at the time of the decedent's death, January 12, 1955, was $336,064.52. This figure includes transfers which were added to the corpus on January 12, 1934, and September 5, 1935, aggregating $73,442.98. The value of the trust at the time of E. Victor Williams' death was $317,790.75.

The taxpayer included in the gross estate the assets added to the trust on January 12, 1934, and September 5, 1935, and the sum of $10,000.00 reserved in paragraph 12.B. of the trust. The taxpayer excluded from the gross estate all of the other assets of the trust.

Only one section of the Internal Revenue Code governs this case. It is 26 U.S.C. § 2036, Internal Revenue Code of 1954, which provides:

"(a) General rule.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in a case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or

"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

"(b) Limitation on application of general rule.—This section shall not apply to a transfer made before

March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931."

The joint resolution of March 3, 1931, to which reference is made in the statute, amended Section 302(c) of the Revenue Act of 1926, so as to read as follows:

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or for any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom."

The legislative history of this resolution may be found in Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949).

The taxpayer contends that the decedent did not retain for her life or for any period not ending before her death the income from the trust. The taxpayer relies upon two provisions of the trust: paragraph 2.A., which provides that periodically but not less frequently than once in each quarter during the life of the decedent the net income of the trust shall be paid to her; and paragraph 7.B. of the trust, which provides that no beneficiary shall have any interest in the income until the day upon which the trustee shall pay the income to the beneficiary, and then only if such beneficiary be living on such day. The taxpayer points out that the decedent, therefore, did not retain the right to the income that accumulated during the period from the last payment to the date of her death.

Consequently, he argues, the decedent did not retain income for life.

In support of this position the taxpayer cites the Revenue Act of 1932, which changed the language formerly found in Section 302(c) so as to read:

" * * *, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death * * *."

The taxpayer emphasizes that the Congress by adding in the 1932 amendment the clause "or for any period not ascertainable without reference to his death", recognized that provisions similar to that contained in this trust were not reservations for life. The taxpayer cites the Senate Finance Committee Report on the Revenue Act of 1932, and the present regulations to buttress his position. The Senate Finance Committee Report explained the changes made in the 1932 Act, as follows:

"(1) The insertion of the words 'or for any period not ascertainable without reference to his death,' is to reach, for example, a transfer where decedent reserved to himself semi-annual payments of the income of a trust which he had established, but with the provision that no part of the trust income between the last semi-annual payment to him and his death should be paid to him or his estate, or where he reserves the income, not necessarily for the remainder of his life, but for a period in the ascertainment of which the date of his death was a necessary element.

"(2) The insertion of the words 'or for any period which does not in fact and before his death,' which is to reach, for example, a transfer where a decedent, 70 years old, reserves the income for an extended term of years and dies during the term, or where he is to have the income from and after the death of another person until his own death, and such other person predeceases

him. This is a clarifying change and does not represent new matter." Senate Report No. 665, 72d Cong., 1st Sess., 1939–1 C.B. (Part 2) 532."

Section 20.2036.1(b) (1) of the Regulations states:

"(b) Meaning of Terms—(1) A reservation by the decedent 'for any period not ascertainable without reference to his death' may be illustrated by the following examples:

"(i) A decedent reserved the right to receive the income from transferred property in quarterly payments, with the proviso that no part of the income between the last quarterly payment and the date of the decedent's death was to be received by the decedent or his estate; and  *  *  *."

In Estate of Selznick, 15 T.C. 716 (1950), affirmed per curiam 195 F.2d 735 (9th Cir., 1952), the net income of a trust was required to be paid Selznick monthly or in other convenient installments as directed by him for and during his lifetime. He had the right to direct a part of the income to be added to the corpus. The trustee could pay from income or corpus expenses of the last illness and funeral of the deceased beneficiary. In these respects the trust differed from the trust in the case at bar. In the Selznick trust any income accrued or undistributed at the termination of any trust or estate was payable to the next beneficiary. In Selznick the taxpayer contended that the decedent did not receive all of the income from the trust which accrued during his life and that the decedent retained the right to income only for a period which had to end before his death. At 15 T.C. 725–727, the Court said:

"There is opposed to petitioners' view the very purpose of the Joint Resolution of 1931, the language of which determines this issue. In May v. Heiner, 281 U.S. 238 [50 S.Ct. 286, 74 L.Ed. 826] (1930), the decedent had transferred property in trust, the income of which was to go to her husband for his life and then to her for her life. It was held that the property was not includible in the decedent's gross estate. The next year, on March 2, 1931, the Supreme Court handed down three *per curiam* opinions based on May v. Heiner, supra. Those cases differed from May v. Heiner, supra, in that there was no intervening life estate, i. e., the income was reserved for the grantor with other disposition at death. This type of case is the same as the present situation except that here we have the payment provision resulting in the income accrued at grantor's death going to his beneficiaries. The point is that it was a reservation of life income which was before Congress when, on the very next day after the three *per curiam* decisions were rendered, the Joint Resolution of March 3, 1931, was enacted. The meaning of that Resolution was clear—the reservation of a life estate will bring the transferred property within the gross estate of the transferor. The petitioners' argument is that the language of the Joint Resolution of 1931 as it provides for a trust with income retained did not cover the present trust; that to do so it took the full force of the language of the 1932 Act which was not retroactive; that the language of the 1932 Act as it states 'or for any period not ascertainable without reference to his death' is the use of words in the statute which, for the first time, reaches this type of trust. In order to arrive at this argument, petitioners must first take the view that 'reservation of income' requires every last cent of income to go to the decedent-grantor.

"In our opinion, there is little to support this view other than reliance on the confusion and uncertainty that existed in 1931 and 1932 concerning the subject sections of the law. We need not now borrow that confusion or share ancient doubts.

This is another day and another atmosphere in which the old language must be examined, for it was the *language* of the 1931 change that is revived by grace of the 1949 Act. In this connection, it is interesting to note that there was some doubt in Congress that the section of the 1949 Act providing specifically for the trusts created between March 3, 1931, and June 7, 1932, was at all necessary. Had the provision not been adopted, it would have left trusts created during the critical period to be examined unqualifiedly under the new section 811(c) (1) (B) which the petitioner tacitly admits would render these transfers taxable. It is apparent that in the 1949 Act, Congress meant only to give the pre-1931 trusts the benefit of reliance on May v. Heiner, *supra*, not to create any new basis for interpretation of the Joint Resolution of 1931 and subsequent law or to perpetuate the doubts that might have existed prior to 1949 as to their interpretation."

Although the facts in the Selznick case are not similar in every respect to the case at bar, the principles in the Selznick case furnish sound precedent for holding that the trust must be included in the decedent's gross estate.

■ In determining what interest the decedent retained, it is essential to consider the trust in its entirety. It can not be construed by considering only isolated paragraphs. For example, paragraph 2.A. and paragraph 2.B. must be read together. In paragraph 2.A. the trustee was required to pay periodically, not less frequently than once in each quarter, during the life of the decedent the net income to her. Under paragraph 2.B. it was only "thereafter", that is, after the life of the decedent that income could be paid to the next beneficiary.

Paragraph 7.B., which provided that no beneficiary shall have any interest in the income until the day the trustee pays the income and then only if the beneficiary be living on that day, must be viewed in context with paragraph 2.A. and paragraph 2.B. Viewed in this context, it is apparent that paragraph 7.B. creates a condition subsequent. The income accrued in the trust since the last payment belonged to the decedent, but if she died before the next payment, the accumulated income vested in nobody. It would vest in the next beneficiary only if he were alive on the date of the next periodic payment. The condition that terminated the decedent's actual or potential right to income was her death.

The decedent did not recognize the fine distinction which the taxpayer now draws. In the gift tax which she paid in 1938 upon the death of her husband, she deducted the full value of her life interest without any recognition of the present contention that she might not receive a full life interest.

In Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996 (1931), the first clause of a deed conveyed a life estate, reserving to the grantor the fee in the event the grantee died prior to the grantor. The second clause conveyed to the grantee the property in fee if the grantee survived the grantor. The Court, holding the transfer was intended to take effect at or after the grantor's death, said at 283 U.S. 234, 51 S.Ct. 399:

" * * * Nothing is to be gained by multiplying words in respect of the various niceties of the art of conveyancing or the law of contingent and vested remainders. It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed."

In a life estate, the income accrued from the last payment to the date of decedent's death is ordinarily an asset of the decedent's estate. The taxpayer contends that the provisions of paragraph 7.B. caused this trust to differ from a life estate, since under the provisions of that paragraph the decedent's

estate had no right to the income accruing from the date of the last payment to the time of her death. The fact remains, however, that the decedent had the right to income until her death. It was the decedent's estate, not the decedent, which paragraph 7.B. affected.

The decedent made an unusual provision for her estate in paragraph 12.B., which could nullify paragraph 7.B. Although consideration of paragraph 12.B. is not necessary for decision of this case, it does illustrate the broad rights of the decedent.

Paragraph 12.B. states:

"The right is further expressly reserved by the Settlor that she may by her last will and testament dispose of not to exceed in the aggregate the sum of Five Thousand Dollars ($5,000.00) to Ten Thousand Dollars ($10,000.00), which said sum shall constitute a charge upon and be paid out of the corpus of this trust."

Her will could contain a bequest of a sum equal to the income received by the trust between the last periodic distribution of the income and the date of her death. The only limitation to this bequest is that it could not exceed the sum of $10,000.00. No evidence of the annual income of the trust was introduced. However, considering the assets of the trust and the fact that income had to be distributed at least quarterly, it is apparent that the sum of $10,000.00 would provide a bequest adequate to substitute for the accrued, unpaid income. Paragraph 12.B. charged the bequest against corpus, but this provision must be considered along with paragraph 7.D., in which the decedent authorized the trustee to determine what money was to be treated as capital or income. Thus the trustee could determine the accrued, unpaid income to be capital. This, under the terms of paragraph 7.D., would be conclusive and binding upon the next beneficiary, who under paragraph 7.B. had no vested interest in the income until the day upon which the trustee was

to pay it and then only if the beneficiary was living.

It is not suggested that paragraph 12.B. and paragraph 7.D. were used as outlined above. But the fact remains that the decedent created a trust which permitted her to add the accrued income to her estate.

The Court concludes that the trust falls within the amendatory language of the joint resolution of March 3, 1931, and must be included in the decedent's gross estate. In view of this it is not necessary to decide whether the transfer was made at the time the trust was created or at the time of the death of E. Victor Williams.