JAMES P. CARR and YVONNE C. CARR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carr v. Commissioner
Docket Nos. 7668-79, 1532-80.
United States Tax Court
T.C. Memo 1981-289; 1981 Tax Ct. Memo LEXIS 453; 42 T.C.M. (CCH) 77; T.C.M. (RIA) 81289; June 15, 1981. James P. Carr, pro se. James A. Nelson, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for 1977 and 1978 in the respective amounts of $ 380 and $ 309.52. The issue for decision is whether petitioners, in applying the income averaging provisions to determine their liabilities for 1977 and 1978, were required to compute "base period income" for each of the years prior to 1977 by increasing taxable income for those years in the amount of $ 3,200 as directed by section 1302(b)(3). *454 [1]
The facts are stipulated. At the time the petitions in these consolidated cases were filed, petitioners James P. Carr and Yvonne C. Carr were legal residents of Tacoma, Washington. They filed their joint Federal income tax returns for 1977 and 1978 with the Ogden Service Center, Ogden, Utah. Petitioners employed the income averaging provisions of sections 1301 through 1305 in computing their tax liabilities for 1977 and 1978. In computing their "base period income" for each year prior to 1977 included in the base period, however, petitioners failed to increase taxable income for each such prior year by the amount of petitioners' zero bracket amount ($ 3,200) [2] for the taxable year as directed by section 1302(b)(3). That section in the form in which it was in effect in 1977 and 1978 is as follows: (3) Transitional rule for determining base period income.--The base period income * * * for any taxable year beginning before January 1, 1977, shall *455 be increased by the amount of the taxpayer's zero bracket amount for the computation year. Respondent determined that the zero bracket amount ($ 3,200) increase in taxable income for pre-1977 years was required and, on that ground, determined the disputed deficiencies. Petitioners have not filed a brief but stated when the case was submitted that they rely upon the allegations in their petitions. Their petitions appear to recognize that the language of section 1302(b)(3) prescribes the increase, but alleges that the effect of the section is to lay a "selective and discriminatory tax increase" in 1977 and the 3 following years for those individuals, including petitioners, who itemized deductions in prior years (base period years) and qualified for income averaging under section 1302. The petitions allege that Congress did not intend such discrimination. We must sustain respondent's determination. Basically, the income averaging method involves 5 taxable years--the "computation year" for which the tax is calculated and the "base period years" which are the immediately preceding 4 taxable years. The first step, the one which is here in dispute, in applying the method is the *456 determination of "averageable income," i.e., the excess of the current year's taxable income over a base amount. In general terms, the base amount is 120 percent of the average taxable income for the 4 base period years. Under section 1302(b)(3), quoted above, in computing the averageable taxable income for the base period years, the taxable income for each pre-1977 base period year is increased by the taxpayer's zero bracket amount for the current computation year. This increase in pre-1977 base period years was required because it was thought to be the most practical method of making pre-1977 taxable incomes comparable to post-1976 taxable incomes, which are determined by taking the zero bracket amount into account. S. Rept. No. 95-66 (1977), 1977-1 C.B. 484, accompanying the Tax Reduction Act of 1977, Pub. L. 95-30, 91 Stat. 127, which initiated the zero bracket concept, explains: Income averaging.--The bill's change in the definition of taxable income also requires technical adjustments in the Code provisions for income averaging. In order to leave taxpayers in a position similar to that which they would occupy if the definition of taxable income were not *457 changed by the bill, their taxable income must be adjusted for years prior to those beginning in 1977, when the change in the definition of taxable income becomes effective. The simplest method for giving taxpayers essentially the same access to and the same advantages from income averaging as they enjoy under present law is to increase their pre-1977 base period taxable income, that is, their taxable income for taxable years beginning in 1973, 1974, 1975, and 1976, by their zero bracket amount. Although the zero bracket amount added to the pre-1977 taxable income generally exceeds a taxpayer's standard deduction for each of those years, the use of a single flat amount is simpler than determining four separate standard deductions. Furthermore, any lost tax savings to a taxpayer because of adding in the zero bracket amount instead of a standard deduction results in only a slightly higher taxable income, and after averaging, will involve only a deminimis amount, probably well under $ 20. By making the adjustments backwards to prior years, the need for these adjustments will eventually disappear as present law taxable income years (that is, taxable years before 1977) drop *458 from the four base years. In addition, this adjustment will prevent an undesirable one-time surge in the number of taxpayers eligible for income averaging in 1977. If no adjustment were made for pre-1977 years, not only would the taxpayer using averaging in 1977 have a higher averageable income, but more taxpayers would be artificially eligible because they would be comparing new taxable income from which no reduction for a standard deduction has been made, with the present law taxable income for four prior years when taxable income was reduced by a standard deduction. We conclude from this explanation in the Senate committee report that petitioners are mistaken in their contention that Congress did not intend to require the adjustment prescribed by the language of section 1302(b)(3). The Congress decided, this report indicates, that "the use of a single flat amount [the zero bracket amount] is simpler than determining four separate standard deductions." The report also shows that section 1302(b) would deny some taxpayers the full benefit of income averaging during a limited period but the conclusion was that any "lost tax savings to a taxpayer because of adding in the zero *459 bracket amount instead of a standard deduction" would result in a deminimis tax increase. This judgment is one for the Congress, not the courts, to make. If petitioners intended to allege in their petitions that section 1302(b)(3) is unconstitutional, we think they are also mistaken in that position. "The power of Congress in levying taxes is very wide, and where a classification is made of taxpayers that is reasonable, and not merely arbitrary and capricious, the Fifth Amendment can not apply." Barclay & Co. v. Edwards, 267 U.S. 442, 450 (1924); Barr v. Commissioner, 51 T.C. 693, 695 (1969). The income averaging provisions are intended to ameliorate the effect of the progressive tax rates on fluctuating incomes. The transitional rules of the section, required because of the redefinition of taxable income occasioned by the adoption of the zero bracket concept, apply to all taxpayers alike who utilize the income averaging provisions. They are designed only to cover the pre-zero bracket years falling in the base period. We think the explanation quoted above from the Senate committee report shows clearly that the provisions are not arbitrary *460 and capricious. To reflect the foregoing, Decisions will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. See sec. 63(d) in the form in which it applied to taxable years beginning before Jan. 1, 1979.↩